In the Matter of the Bar Admission of Edward Littlejohn:

Edward Littlejohn, Petitioner,

v.

Board of Bar Examiners, Respondent.

Supreme Court

*No. 02–2599–BA. Oral argument March 6, 2003.—Decided May 13, 2003.*

2003 WI 36

(Also reported in 661 N.W.2d 42.)

For the petitioner there were briefs by *Thomas J. Basting, Sr.* and *Brennan Steil Basting & MacDougall, S.C.,* Janesville, and oral argument by *Thomas J. Basting, Sr.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. PER CURIAM. This is a review, pursuant to SCR 40.08(5),[1] of the final decision of the Board of Bar Examiners (BBE) declining to certify that the petitioner, Edward Littlejohn, Jr., has satisfied the character and fitness requirements for admission to the Wisconsin bar set forth in SCR 40.06(1).[2] The BBE's final decision dated August 28, 2002, was consistent with its earlier "Intent to Deny" letter sent to Littlejohn explaining why it was declining to certify him for admission to the Wisconsin bar. The BBE's refusal to certify that Littlejohn satisfied the character and fitness requirements for admission to the Wisconsin bar was based primarily on Littlejohn's conduct and actions during the 24 years he was licensed to practice dentistry in the state of Minnesota. During that time Littlejohn was the subject of more than 25 complaints filed with the Minnesota Board of Dentistry. That board in September of 1997, based on Littlejohn's stipulation, suspended Littlejohn's dental license; after a suspension of eight

---

[1] SCR 40.08(5) provides: "[a] petition to the supreme court for review of an adverse determination of the board under this rule shall be filed with the clerk within 30 days of the date on which the written notice thereof was mailed to the applicant."

[2] SCR 40.06(1) provides:

> (1) An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

185

months, Littlejohn was reinstated to the practice of dentistry in Minnesota in June of 1998 upon certain conditions.

¶ 2. Littlejohn, however, did not resume his dental practice; instead, following his May 1999 graduation from the William Mitchell College of Law in Minnesota with a J.D. degree, and his successful completion in July 1999 of the Minnesota bar exam, he applied for admission to the bar in Minnesota. The Minnesota Board of Law Examiners initially declined to recommend his admission to the bar of that state based on that board's character and fitness investigation; however, Littlejohn was allowed to reapply for admission in Minnesota after a year. Littlejohn filed his new application for admission to the Minnesota bar on July 13, 2001, and after a further investigation into his character and fitness, he was then admitted to practice law in Minnesota on October 23, 2001. Littlejohn was also admitted to practice in the Ho-Chunk Nation, where he was previously employed as a paralegal and is now currently employed as a tribal attorney.

¶ 3. Littlejohn applied for admission to the Wisconsin bar on April 26, 2001. He passed the Wisconsin bar exam in July of 2001. After conducting its own character and fitness investigation, the BBE, however, refused to certify his eligibility on character and fitness grounds finding that:

(1) Littlejohn misrepresented his appearance as a speaker at a national dental conference in 1984;

(2) he was the subject of more than twenty-five complaints regarding his practice of dentistry in Minnesota;

(3) he was suspended from the practice of dentistry

186

in that state as the result of nine complaints of professional misconduct, to which he stipulated; those complaints included allegations of inadequate infection control, fraud, delivery of unnecessary dental services and practices beyond the scope of his dental license;

(4) his explanations before the Wisconsin board for his misconduct as a dentist showed no remorse and attempted to shift the blame for his problems to a "turf war" between him and the dental establishment in Minnesota;

(5) although he claimed remorse, at the same time he also claimed innocence of the acts for which he said he was remorseful;

(6) he subsequently recanted his stipulation with the Minnesota Board of Dentistry, asserting that 30 to 40 percent of that board's allegations were false or misleading;

(7) his explanation showed no admission of negligence or expression of remorse for the injuries he had caused his dental patients; and

(8) he had delayed for more than five years in satisfying four civil judgments—unconnected with his dental practice—that had been obtained against him.

¶ 4. Based on those specific findings, the BBE concluded that Littlejohn's conduct in misrepresenting his appearance at the national dental convention, his conduct resulting in the suspension of his license to practice dentistry, his abjuration of the stipulation of misconduct he had entered into with the Minnesota dentistry board and his delay in satisfying several civil judgments, precluded the BBE from certifying that

187

Littlejohn had satisfied his burden to prove that he has the character and fitness necessary to practice law in Wisconsin.

¶ 5. On this review Littlejohn contends that many of the findings of fact made by the BBE are clearly erroneous and therefore should be rejected by this court. *See In re Bar Admission of Rusch,* 171 Wis. 2d 523, 528–29, 492 N.W.2d 153 (1992). Furthermore, he contends that this court must, after its de novo review, determine whether the BBE's conclusions of law based on the facts which are not clearly erroneous are "proper." *See In re Bar Admission of Rippl,* 2002 WI 15, ¶ 16, 250 Wis. 2d 519, 529–30, 639 N.W.2d 553; *In re Bar Admission of Crowe,* 141 Wis. 2d 230, 232, 414 N.W.2d 41 (1987).

¶ 6. Specifically, Littlejohn contends that it was clearly erroneous for the BBE to either neglect or refuse to consider the findings and conclusions of the Minnesota Board of Law Examiners—especially since the Minnesota board had only a few months earlier admitted him to practice in that state after conducting its second investigation into his character and fitness and into the same facts considered and relied upon by the BBE in refusing to certify his character and fitness for admission in Wisconsin. According to Littlejohn the BBE's findings of fact are clearly erroneous and its ultimate conclusions of law are not proper. Thus, he asks this court, after its own de novo review, to either order his admission, impose conditions upon his admission, or allow him to immediately apply for admission to the Wisconsin bar without being required to retake the Wisconsin bar exam.

■

¶ 7. When this court reviews an adverse determination of the BBE pursuant to SCR 40.08(5), it adopts

the BBE's findings of fact if they are not clearly erroneous. Then this court determines whether the BBE's conclusions of law based on those facts are proper. This court retains the ultimate authority to determine who should be admitted to the bar of this state; while the BBE's experience in administering the bar admission rules is appreciated, this court is obligated to make its legal determinations de novo. *Bar Admission of Rippl*, 2002 WI 15, ¶¶ 3, 16.

¶ 8. After our de novo examination of the issues in this matter we conclude that the BBE's decision declining to certify Littlejohn's character and fitness for purposes of bar admission in this state was correct and we adopt it. In its initial "Intent to Deny" letter echoed in its subsequent factual findings and conclusions, the BBE was troubled by Littlejohn's conduct as a dentist in Minnesota which ultimately resulted in his suspension from the practice of dentistry in that state. We agree with the BBE that that behavior, coupled with some of Littlejohn's other relevant conduct during that same period, demonstrates that he does not possess the appropriate character and fitness to be admitted to practice in this state. Specifically, we find that his conduct during the time he practiced dentistry in Minnesota was relevant and supported the BBE adverse determination under BA 6.02(d), (f), (g), and (l).[3]

---

[3] BA 6.02 appended to Chapter 40 of the Wisconsin Supreme Court Rules relating to bar admission, identifies relevant conduct as follows:

> BA 6.02 Relevant Conduct. The revelation or discovery of any of the following should be treated as cause for further inquiry before the Board decides whether the applicant possesses the character and fitness to practice law:

We find that many, if not all, of the reasons Littlejohn's dental license was suspended can reasonably be related to this court's character and fitness standard set out in footnote 3. Those reasons referenced Littlejohn's actions as a dentist involving dishonesty or misrepresentation, neglect of financial responsibilities, and neglect of professional obligations. Those various acts of misconduct justified the dentistry board's suspension of his dental license and likewise justify the BBE recommendation and our conclusion not to admit Littlejohn to the practice of law in this state.

¶ 9. When Littlejohn entered into the stipulation and order with the Minnesota Board of Dentistry on August 21, 1997, he admitted that the facts and conduct specified in a ten-count complaint against him filed by that board constituted violations of certain Minnesota statutes and rules.[4]

---

. . . .

(d) acts involving dishonesty or misrepresentation

. . . .

(f) neglect of financial responsibilities

(g) neglect of professional obligations

. . . .

(l) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction.

[4] Specifically, Littlejohn stipulated that his conduct as alleged in the dentistry board complaint violated Minnesota statute § 150A.08. That statute provides that the dental board may suspend a license to practice dentistry upon " . . . *fraud or deception* in connection with the practice of dentistry . . . ." (Emphasis added.)

¶ 10. The conduct Littlejohn stipulated to and which formed the basis for the dentistry board's complaint and the subsequent order suspending his dental license included:

- Failure to cooperate with the Board of Dentistry, its agents, and those working on behalf of the board, including failure to produce requested records, refusing to answer questions during interviews, and otherwise failing to cooperate with the Board of Dentistry's investigation of allegations of professional misconduct by Littlejohn.

- Provision of substandard dental implant treatment to patients.

- Failure to provide appropriate prosthodontic and diagnostic care to patients.

- Failure to provide appropriate endodontic treatment to patients.

- Failure to appropriately place restorations.

- Failure to use anesthetics and sedatives appropriately.

- Failure to make or maintain adequate patient records.

- Practiced beyond the legal scope of license as a dentist by providing non-dental diagnoses and/or treatment to patients including injecting substances in the nose of one patient and the knee of another patient and diagnosing dairy allergies for one or more patients.

- Failure to maintain adequate safety and sani-

tary conditions for dental office by failure to comply with current infection control guidelines.

- Unprofessional conduct and provision of unnecessary services to patients, and alteration of records relating to payment for services rendered.[5]

¶ 11. The record before this court reveals that when Littlejohn applied for admission to the bar in Minnesota he answered "yes" to the question of whether he had been disciplined as a member of any other profession. In the narrative he attached to the Minnesota bar application he explained that his professional opinions and office policies with respect to the use of mercury in dental fillings was part of the basis for the dentistry board's complaint against him.

¶ 12. The Minnesota Board of Law Examiner's investigative memorandum, prepared after Littlejohn's first bar admission application had been filed in that

---

[5] The factual underpinnings for that final count in the dentistry board's complaint included Littlejohn's inappropriate billing of a patient's insurance company for the removal of a nonodontogenic cyst and using a specific code number for the service to support the bill even though the patient's treatment record indicated another type of service had been provided. Also, the dentistry board asserted, and Littlejohn stipulated, that he had altered a patient's treatment record at the patient's request so that she could claim IRS credit for services he had provided.

Littlejohn subsequently explained that using the wrong code number when billing for the removal of a cyst was simply a mistake. He also claimed that he had nothing to do with changing dates on the patient's treatment record and that that had been done without his knowledge by one of his dental office employees who was subsequently discharged.

state, described Littlejohn's dispute with the dentistry board over this issue as follows:

> ... the use of liquid mercury in dental fillings is far and away the norm. In fact, there are very few practitioners in the United States who do not use mercury. Dr. Littlejohn was one of those practitioners. According to [an assistant attorney general in Minnesota], it was not uncommon for Dr. Littlejohn to convince patients who had liquid mercury in dental fillings that this was a hazard to their health and those fillings should be removed and he should replace those fillings with implants. Obviously, this is an extremely complicated and expensive procedure and very profitable for Dr. Littlejohn. In the process, as indicated in the stipulation, many patients suffered adverse effects. Complaints from these patients caused the Board of Dentistry to begin the investigation that resulted in Dr. Littlejohn's suspension . . . .

¶ 13. This theme was echoed by Assistant Attorney General Thomas Balistreri in oral argument before this court on March 6, 2003. In response to a question about what activities by Littlejohn as a dentist, beyond fraudulent billing, related to his character and fitness to practice law, Assistant Attorney General Balistreri responded as follows:

> . . . the way he was fraudulent is this . . . . He had patients who had perfectly good silver mercury amalgam fillings in their teeth . . . . There is a debate in the dental community over whether silver amalgam fillings are safe. Most dentists would say they are. Some dentists say they are not. But the point is . . . if you're going to . . . say that silver amalgam filling is unsafe and needs to be replaced, what do you do to replace it? You drill the old filling out and put in a non-metallic plastic filling . . . . Well, that's not what Dr. Littlejohn did . . . he didn't just replace the filling. He took out the

193

whole tooth, a perfectly good tooth and replaced it with a dental implant which costs big bucks. That's a rip-off. That's fraud. He told these people they needed these dental implants when they didn't need dental implants. And on top of it, not only did he put in dental implants that these patients didn't need, but he did it badly . . . .

¶ 14. Littlejohn's attorney did not respond to this description of Littlejohn's behavior in his rebuttal argument.

¶ 15. On this review Littlejohn asserts that many of the BBE's findings are clearly erroneous and not supported by the record. For example, he contends that the BBE finding that he had misrepresented his appearance as a speaker at a national dental conference, which the BBE viewed as relevant conduct under BA 6.02(d) as an act involving dishonesty or misrepresentation, is not supported by the record. Littlejohn explains that 1984 situation and notes that it occurred almost 20 years ago; in any event, he notes that the Minnesota dentistry board had cautioned him about his misleading statements concerning the conference as reported in a newspaper article at the time. According to Littlejohn that newspaper article was wrong and, therefore, the BBE's finding that he had intentionally misrepresented his appearance at that national dental conference was clearly erroneous.

¶ 16. Significantly, Littlejohn does not challenge the BBE's finding that he had been the subject of more than 25 complaints to the Minnesota dentistry board about his practice of dentistry in that state, and that he had been suspended from the practice of dentistry after he admitted to those complaints. He does complain, however, that the BBE failed to acknowledge that the dentistry board subsequently reinstated Littlejohn's license upon his completion of the conditions that board

194

had imposed. Moreover, Littlejohn contends that the BBE's findings are "amazingly silent" on any reference to the fact that the Minnesota Board of Law Examiners, after fully and completely investigating and considering Littlejohn's prior history as a practicing dentist, ulti- mately certified Littlejohn for admission to the bar of Minnesota.

¶ 17. Littlejohn also complains that the BBE in its findings referred to "letters of recommendation" he had appended to his Wisconsin application when what he had actually submitted with that application were affi- davits from eight separate individuals attesting to his character and abilities. He maintains that these affida- vits were not letters of recommendation and that in any event, the BBE ignored them when considering Littlejohn's character and fitness.[6]

---

[6] Two days before the oral argument in this matter the Executive Director of the BBE filed a motion to supplement the record before this court with an affidavit dated February 28, 2003, from Leslie Parker Cohan, a tribal attorney with the Ho-Chunk Nation Department of Justice. In this affidavit Ms. Cohan contradicted her previous affidavit of January 23, 2002, which was one of the eight affidavits Littlejohn had appended to his bar application. In her prior affidavit Ms. Cohan asserted that she had "no reservations" with respect to Littlejohn's character and fitness to practice law in this state. In the new affidavit, however, Ms. Cohan asserted that her answer to the question of whether she would want Littlejohn to be a licensed attorney in the state of Wisconsin would now be a "resounding no."

Because this new affidavit was filed only days before the scheduled oral argument in this matter, this court gave Little- john an opportunity to file a response addressing whether this court should accept this new affidavit. In his response he objected to this court considering this new affidavit and sug- gested that to be fair, he should be given an opportunity to file

¶ 18. Littlejohn also challenges the BBE's finding that he showed no remorse for his unprofessional acts as a dentist. He insists that finding was clearly erroneous—especially the BBE's assertion that Littlejohn's "first" expression of remorse came at the hearing before the BBE on his petition for admission to the bar of this state. According to Littlejohn some of the affidavits he attached to that petition reflected that he expressed "sincere remorse" for the prior incidents that led to the suspension of his dental license, yet, he believes the BBE ignored those affidavits. Littlejohn contends that the BBE's finding that his "first expression of remorse came at [the] hearing" is not supported by the record and is therefore clearly erroneous.

¶ 19. Littlejohn also explains his testimony before the BBE in which he asserted that he thought that 30 to 40 percent of the allegations made against him by the Minnesota Board of Dentistry's complaint were false or misleading and therefore defensible from his standpoint. According to Littlejohn, he stipulated to that complaint because he thought that if he did not do so, his dental license would be revoked, not simply suspended. Littlejohn maintains that he entered into that negotiated settlement with the dentistry board not

a counter-affidavit. Assistant Attorney General Balistreri filed a reply arguing that this court could properly consider Ms. Cohan's new affidavit because it is relevant, withdraws Ms. Cohan's previous opinion, and therefore prevents the members of this court from being misled by a view that is no longer valid.

Although the procedural appropriateness of this last minute filing of a new affidavit with this court is questionable, we need not resolve this procedural skirmish in the context of this case because we view this new affidavit as simply an affidavit withdrawing Ms. Cohan's prior affidavit. Under these circumstances we give no weight to either affidavit.

necessarily because he had actually committed all the acts of misconduct as alleged by the dentistry board, but simply because he wanted to avoid a harsher penalty he feared would be imposed if he mounted a defense to the dentistry board's complaint.

¶ 20. On this review Littlejohn also explains circumstances surrounding several civil complaints that resulted in judgments against him between 1978 and 1994, a fact that the BBE noted in its findings. However, according to Littlejohn, the BBE ignored the fact that those judgments had been satisfied and that he had fully explained each one of those incidents in his various submissions and testimony before the BBE.

¶ 21. While Littlejohn vigorously presents these challenges to the BBE decision in this matter, the centerpiece of his arguments on this review is his claim that the BBE improperly ignored the fact that the Minnesota Board of Law Examiners had only months before investigated Littlejohn's character and fitness and admitted him to the bar in that state. Littlejohn contends that the BBE ignored that determination as well as the Ho-Chunk Nation's subsequent decision admitting him to practice as a tribal attorney. Littlejohn urges this court to hold that when a board of bar examiners in a sister state has conducted a character and fitness investigation into the same facts being investigated by the BBE, the BBE must take into account the results of the investigation conducted in the other state. Furthermore, if the BBE's findings and conclusions differ from those results and conclusions of

the other state, then, according to Littlejohn, the BBE should be required to express "its compelling reasons" for its disagreement.[7]

■

¶ 22. In essence, Littlejohn is asking this court to create a rebuttable presumption and require the Wisconsin BBE to explain, on the record, its "compelling reasons" for rejecting a sister state's favorable determination of the applicant's quest to be admitted to the practice of law in the other state. We decline to do so. Although we respect the other state's determination, we refuse to accord it any controlling weight here. There is no presumption that an applicant for admission to the Wisconsin bar has the appropriate character and fitness to be admitted. Rather, as we said in *In re Bar Admission of Rippl*, 2002 WI 15, ¶ 15, 250 Wis. 2d 519, a candidate for admission to the bar of this state bears the burden of proof to establish his or her qualifications as set forth in SCR 40.02. The BBE's job is to examine the qualifications of applicants and certify to this court those applicants whose character and fitness qualify

---

[7] A similar argument was considered by this court in *In re Bar Admission of Vanderperren*, 2003 WI 37, 261 Wis. 2d 150, 661 N.W.2d 27, being released today. In *Vanderperren* we agreed that if it is a relevant fact for the BBE to consider that an applicant has been denied admission in another state on character and fitness grounds, *see* BA 6.02(k), then the converse should also be true—i.e., that a successful application in another state should also be considered relevant by the Wisconsin BBE. *Id.*, ¶ 57.

However, Littlejohn's arguments, as we understand them, go beyond *Vanderperren;* he would have us create a rebuttable presumption requiring the Wisconsin BBE to identify "compelling reasons" for rejecting another state's favorable decision on the applicant's petition to be admitted to practice in that state.

them for admission to the Wisconsin bar. *Id.,* ¶¶ 3, 15. For those applicants who satisfy the BBE that they are fit to practice law, the BBE's determination is final. *Id.,* ¶ 3. Such applicants are then admitted to practice on the certification of the BBE alone without further review by this court. *Id.*

¶ 23. Under this procedural scenario there is no room for a presumption in favor of finding that an applicant possesses the requisite character and fitness simply because a sister state has already so determined. It is entirely appropriate for the BBE to take into account the favorable decision made by the other state, but we see no reason to require the BBE to expressly discuss or reject the other state's determinations. While the other state's decision may be a relevant factor, the BBE should be free to accord it whatever weight the BBE deems appropriate.

¶ 24. Moreover, because the BBE's favorable determination that an applicant meets the character and fitness requirements is final and not reviewable by this court, any omission by the BBE to consider this type of relevant information is correctible by this court's independent, de novo review of an adverse determination by the BBE as in this case. Thus, even if the BBE wholly ignored the Minnesota Board of Law Examiners' ultimately favorable determination of Littlejohn's character and fitness, we have considered that board's decision on our review in this matter and we have drawn our own inferences from the undisputed documentary evidence. *See In re Bar Admission of Altshuler,* 171 Wis. 2d 1, 15–16 n.2, 490 N.W.2d 1 (1992) (Abrahamson, J. dissenting). Based on our independent review of the record— including Littlejohn's favorable character and fitness evaluation made by the Minnesota Board of Law

Examiners—we find that board's reasons for initially rejecting Littlejohn's application for admission to the bar of that state on character and fitness grounds to be more persuasive in this matter. The undisputed—and in fact, stipulated—facts leading to Littlejohn's dental license suspension inform our decision with respect to his character and fitness to practice law in this state. We agree with the Minnesota Board of Law Examiner's initial decision that Littlejohn's professional misconduct as a dentist demonstrated his neglect of professional obligations, and constituted acts of dishonesty, fraud, deceit or misrepresentation, any of which would be a sufficient reason to preclude a favorable finding regarding his character and fitness. Littlejohn's stipulation with the dentistry board established that his wide ranging dental malpractice endangered his patients; moreover, his admitted acts of fraud, misrepresentation, and performance of unnecessary dental services demonstrate Littlejohn's lack of the appropriate character and fitness to practice law in this state.

¶ 25. The fact that the Minnesota Board of Law Examiners subsequently found Littlejohn possessed the requisite character and fitness to be admitted in that state does not mean that this court must follow suit. We are especially troubled by Littlejohn's obvious attempt in his application and testimony before the BBE to renounce his stipulation with the Minnesota Board of Dentistry. While that may have been, as Littlejohn now claims, simply a negotiated agreement intended to minimize his penalty exposure before the dentistry board, we think it unseemly for him to now claim that 30 to 40 percent of the allegations made against him by the dentistry board were without foundation or were the result of his strained relations with the dental profession caused by differing opinions regarding ap-

propriate treatment procedures. The fact is that Littlejohn stipulated that he committed fraud, misrepresentation, and performed unnecessary dental services. These admitted acts, we believe, reflect poorly on his character and fitness to practice law here and we decline to now excuse that behavior. Despite the fact that the Minnesota Board of Law Examiners ultimately concluded that Littlejohn had been rehabilitated, we find insufficient evidence of such rehabilitation in this record. Accordingly, we affirm the BBE's determination and deny Littlejohn's application to be admitted to the practice of law in this state.

¶ 26. Because our conclusion is based on Littlejohn's stipulated dental professional misconduct, we deem it unnecessary to address Littlejohn's specific challenges to the other findings made by the BBE in this case. Our independent de novo review of this record leads us to agree with the BBE's ultimate conclusion that Littlejohn does not possess the character and fitness to be admitted to practice of law in this state.

¶ 27. IT IS ORDERED that the decision of the Board of Bar Examiners is affirmed and the application of Edward Littlejohn to be admitted to the practice of law in this state is denied.