In re Application of Bagne.

[Cite as *In re Application of Bagne,*
102 Ohio St.3d 182, 2004-Ohio-2070.]

(No. 2003–1228—Submitted February 3, 2004—Decided May 12, 2004.)

**Per Curiam.**

{¶ 1} Applicant, Alexander A. Bagne of Shaker Heights, Ohio, applied on January 15, 2002, to register as a candidate for admission to the practice of law in Ohio. On April 17, 2002, applicant applied to take the Ohio bar examination to be administered in July 2002. On July 9, 2002, the Joint Admissions Committee of the Cleveland and Cuyahoga County Bar Associations recommended that applicant's character, fitness, and moral qualifications be approved for the purpose of his admission to the Ohio bar.

{¶ 2} On July 22, 2002, the Board of Commissioners on Character and Fitness invoked its authority under Gov.Bar R. I(10)(B)(2)(e) to further investigate the character, fitness, and moral qualifications of the applicant, appointing a panel to consider the cause. After a hearing conducted on November 7, 2002, the panel reported its findings to the board. The panel recommended, based on the applicant's character and fitness, disapproval of his application to take the July 2002 bar examination but that he be permitted to reapply for the February 2004 bar examination.

{¶ 3} Applicant earned an accounting degree from Ohio State University in 1994, graduated in 1996 with an MBA from the University of Minnesota, received his law degree from Tulane University in 1999, and is a certified public accountant. In 1999, applicant took the Michigan bar examination but was denied admission to the Michigan bar without release of the examination results because he did not consistently account in character and fitness proceedings for a crime he committed in 1991. Applicant is not permitted to reapply for admission to the Michigan bar until 2006.

{¶ 4} In 1991, when he was 19 years old, applicant was accused of shooting a jogger in the neck with a BB gun. The crime occurred while applicant and a friend were joyriding in an area that applicant thought was fairly remote, and applicant was shooting the BB gun randomly from the passenger side of the car. Applicant insisted before the panel that the shooting was accidental. He claimed that he had not actually seen the jogger because it was dusk, he was traveling on a two-lane road, and the jogger, although running on the passenger side of the car, might have been just cresting an embankment. Applicant guessed that one of his shots must have struck the jogger.

{¶ 5} Applicant related to the panel that when he and his friend were apprehended on the night of the shooting, applicant gave police a false description of the jogger, describing the jogger as a man wearing grey, when the jogger was actually a woman wearing brightly colored clothing. Applicant explained that he had lied to police because he was afraid and thought that he might be released if he cooperated in some way.

{¶ 6} While the charges were pending, applicant completed his studies at Ohio State University. Applicant then pled guilty to aggravated assault, a misdemeanor, and was sentenced to 12 months, all suspended, with one year of probation.[1] During his probation, with permission from the court, he went to graduate school in Minnesota. Applicant completed his probation and was discharged in 1995. His criminal record since then has included only traffic violations—approximately 12 parking tickets and 5 speeding tickets.

{¶ 7} The panel inquired into the reasons why the Michigan Board of Law Examiners had found applicant's credibility and candor suspect. Applicant participated in three separate character and fitness hearings in Michigan and unsuccessfully petitioned the Michigan Supreme Court for review. According to the evidence, applicant was criticized in reports from these hearings for appearing to be willing to say anything for the sake of approval and for attempting to create false impressions as to the seriousness of and his responsibility for his crime. Particularly troubling to the panel was a change in applicant's testimony during the third hearing in Michigan, when he proposed for the first time that the driver of the car, who had died before the hearing, might actually have fired the shot that struck the jogger.

{¶ 8} In addition to his own testimony, applicant provided the telephonic testimony of Michael Hohauser, a seasoned Michigan attorney who then served as a Commissioner of the State Bar of Michigan and had formerly served for

---

1. Applicant's sentence included suspended jail time, although he apparently failed to apprise admission authorities of this part of his penalty. The panel brought the omission to applicant's attention, apparently without considering the omission deliberate.

many years in the Representative Assembly of that state's bar, among other capacities. Hohauser had known applicant for two years, during which he had employed applicant as a clerk. Hohauser testified, as he did on applicant's behalf during the admission proceedings in Michigan, that he was confident in applicant's integrity and applicant's genuine efforts to be forthcoming during that process. Hohauser emphasized that applicant's crime occurred long ago and that applicant had since distinguished himself in his studies and work as a willing and capable performer.

{¶ 9} Hohauser also testified that he had reviewed applicant's Michigan admission materials and police reports of applicant's 1991 crime. In response to the panel's inquiry on the issue, he said that he had seen no inconsistencies. Hohauser then explained:

{¶ 10} "You know * * * in these police reports there's a question about whether * * * the boys were riding about shooting in the dark and aimed for the jogger or didn't aim for the jogger, and I don't know the answer to that question. My impression from Alex was that he darn well knew he was shooting in the direction of the jogger, and I didn't find anything dissembling or problematic about that [as far as applicant's candor in his admission materials]."

{¶ 11} At that point, a panel member inquired further of Hohauser's impression. This exchange ensued:

{¶ 12} "Mr. McBride: Is it your impression from talking to Alex that at the time that he was shooting, he knew that he was shooting in the direction of the jogger?

{¶ 13} "Mr. Hohauser: It seems to me, and I wish I had notes or something in front of me, but it seems to me that he knew he was shooting in the dark and he knew there was a jogger in that area, and my memory is that he knew he was shooting in the area of the jogger.

{¶ 14} "Mr. Bagne: Actually, I didn't know.

{¶ 15} "Mr. Hohauser: I'm sorry, I couldn't hear you.

{¶ 16} "Mr. Bagne: I said actually I didn't know that there was a jogger there.

{¶ 17} "Mr. Hohauser: I'm not going to—I'm only going to testify truthfully from my sitting here today."

{¶ 18} Upon review, the board concluded that applicant seemed unwilling to consistently tell the truth or genuinely accept the consequences for his acts, however many years ago those acts occurred. The board was struck by applicant's need to correct even his own witness as to the degree of applicant's responsibility for shooting the jogger in 1991. Moreover, applicant had blamed his attorney for advising him to suggest during the third Michigan character and fitness hearing that he might not have been completely responsible for the

jogger's injury. The board was skeptical that the same lawyer who had represented applicant in the second hearing would have advised him to change testimony in preparation for a third. The board found that applicant had a fairly cavalier absence of remorse for his victim, whom he had never met, implying on one occasion that the jogger's injuries were insignificant because after the shooting, she had been able to jog back to her house before going to the hospital.

{¶ 19} The board concluded that applicant had thus failed to sustain his burden of proving by clear and convincing evidence that he currently possesses the requisite character, fitness, and moral qualifications for admission to the Ohio bar. Gov.Bar R. I(11)(D)(1) In making this determination, the board applied the standards of Gov.Bar R. I(11)(D):

{¶ 20} "[T]he Board concludes that the incident with the jogger was the commission of a crime, Gov.Bar Rule I(D)(3)(a), [and] that the applicant failed to provide complete and accurate information and provided false statements to law enforcement officials and to the Michigan Bar, Gov.Bar Rule I, Sec. (11)(D)(3)(g) and (h). The Board also finds he was denied admission to the Michigan Bar on character and fitness grounds, Gov.Bar Rule I, Sec. (11)(D)(3)(n).

{¶ 21} "Having made these findings, the Board considers the applicant's present character and fitness in light of these prior acts, Gov.Bar Rule I, Sec. (11)(D)(4). The Board recognizes that the applicant is now 30 years old and that this incident occurred 11 years ago when applicant was 19 years old, Gov.Bar Rule I, Sec. (11)(D)(4)(a) and (b). Despite the fact that the conduct was very serious and injured the jogger, Gov.Bar Rule I, Sec. (11)(D)(4)(d), the Board is more troubled by the candor and credibility of the applicant concerning the incident. He has an original explanation to local law enforcement * * * and then later versions * * *. During the hearing before the Ohio panel, the applicant interrupted his witness to supply his correction of the witness's testimony. * * * All of these renditions lead the Board to conclude the applicant has lacked candor during our admissions process as well as that of Michigan, Gov.Bar Rule I, Sec.(11)(D)(4)(i)."

{¶ 22} The board adopted the recommendation of the panel and also recommended, based on the applicant's character and fitness, that his application to take the July 2002 bar examination be disapproved but that he be permitted to reapply for the February 2004 bar examination.

{¶ 23} "Evidence of false statements, including material omissions, and lack of candor in the admissions process reflect poorly on an applicant's present character, fitness, and moral qualifications." *In re Application of Panepinto* (1999), 84 Ohio St.3d 397, 704 N.E.2d 564; *In re Application of Cvammen,* 102 Ohio St.3d 13, 2004-Ohio-1584, 806 N.E.2d 498. Even one incomplete answer can lead to the disapproval of an admission application if the applicant does not fully and

honestly explain when the opportunity arises. See, e.g., *In re Application of Ireland–Phillips* (1995), 71 Ohio St.3d 609, 646 N.E.2d 453. Thus, upon review, we agree that applicant has not demonstrated his current character, fitness, and moral qualifications for admission to the Ohio bar. And because this record reveals more than one instance of applicant's reluctance to respond with total honesty, we modify the board's recommendation to a more commensurate disposition.

{¶ 24} Accordingly, applicant's character and fitness for the purpose of his application to take the July 2002 bar examination are hereby disapproved; however, he is permitted to reapply for the bar examination to be administered in February 2005.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Alexander A. Bagne, pro se.

Weston, Hurd, Fallon, Paisley & Howley, L.L.P., and Jay S. Hanson, for the Joint Admissions Committee of the Cleveland and Cuyahoga County Bar Associations.