Taylor STRASSER, Movant,

v.

CHARACTER AND FITNESS COMMITTEE OF THE KENTUCKY OFFICE OF BAR ADMISSIONS, Respondent.

No. 2004-SC-1088-KB.

Supreme Court of Kentucky.

April 21, 2005.

Stephen W. Owens, Pikeville, Counsel for Movant.

Bonnie C. Kittinger, Director and General Counsel, Character and Fitness Committee, Kentucky Office of Bar Admissions, Lexington, Counsel for Respondent.

**OPINION AND ORDER**

This is an original action for review of a decision of the Character and Fitness Committee (Committee) of the Kentucky Board of Bar Examiners denying an appli-

cation for admission to the practice of law in Kentucky.[1] Ms. Strasser requests that she either be admitted to the practice of law in Kentucky or be granted a conditional admittance.[2]

In February of 2001, Ms. Strasser filed her application to take the July Kentucky Bar Examination. On that application she disclosed a misdemeanor citation issued in 1997, but it was brought to the attention of the Committee that she had not disclosed that citation on her law school applications or on an application for an intern position. The Committee requested additional information on the citation, but Ms. Strasser did not provide all additional documentation requested by the Committee. The Committee therefore denied her permission to sit for the July bar exam. However, two weeks before the July bar exam, the Committee reconsidered its position and allowed Ms. Strasser to take the exam upon her written waiver providing that her scores would not be released until she successfully proved her character and fitness to practice law in Kentucky.

On December 6, 2001 and again on May 23, 2002, the Committee held formal hearings on Ms. Strasser's character and fitness to practice law in Kentucky. On July 30, 2002, Ms. Strasser's application for admission was denied for failure to prove the requisite character and fitness. An appeal was taken pursuant to SCR 2.060 to this Court on October 9, 2002. In March of 2002 in an unrelated matter, four-felony charges were filed against her former boyfriend, Mr. Kelly Ward, with Ms. Strasser as the complaining witness.

On March 20, 2002, this Court issued an Opinion and Order mandating that Ms. Strasser's application be deemed granted and her bar exam grade be unsealed. This Court determined that Ms. Strasser "has taken appropriate steps to deal with the residue of her early life ... has demonstrated insight into the problems she faces and maturity in the manner in which she is dealing with them." The Committee filed a motion for reconsideration of our order, but released her bar exam results. The Court issued a subsequent order stating that Ms. Strasser must file a new application for admission by examination, pursuant to SCR 2.024. Unfortunately, she did not pass the July bar exam and the Committee withdrew the motion for reconsideration.

The Committee also discovered new information relating to Ms. Strasser's character and fitness to practice law stemming from instances of domestic violence with her former boyfriend, Mr. Kelly Ward. The new information was provided in a letter sent by Kelly Ward's Sister, Ms. Kim Tharp–Barrie. The information showed inconsistencies in the recounting of events to police and in a subsequent civil complaint against a homeowner's insurance company. The Committee hired an investigator to look into the validity of Ms. Tharp–Barrie's allegations. Ms. Tharp–Barrie also hired an investigator to assist the Committee.

On May 9, 2003, Ms. Strasser reapplied to take the July 2003 bar exam. The Committee allowed Ms. Strasser to the take the exam under the same written waiver. She only sat for the July 2003 multi-state portion of the exam since she had previously passed the written portion. In October 2003, per the Committee's request, Ms. Strasser participated in inter-

---

1. SCR 2.060.

2. Under the conditional admittance, Ms. Strasser proposes to arrange to have her work and behavior supervised by a group of mentor attorneys. In addition, her fitness to practice law would be monitored by counselors who would see her on a regular basis concerning relationship and alcohol issues. Any violations would be reported to the KBA.

views with three psychologists and was given the Minnesota Multiphasic Personality Inventory (MMPI) test at Seven Counties in Louisville, Kentucky. The psychologist asked whether she had anger management issues or whether she had abused alcohol. According to Ms. Strasser, the three panel psychologists found that she could practice law concurrently with attending counseling. In addition, Ms. Strasser paid for all the costs associated with the Committee's investigation, but on November 17, 2004 the Committee issued an opinion denying her application for admission to the Kentucky Bar by a vote of 2–1. Chairman Grant Helman dissented without a separate opinion "on the basis that Ms. Strasser has rehabilitated herself and currently meets the requirements of good moral character and mental fitness to practice law in Kentucky."

Ms. Strasser now seeks review under SCR 2.060 and claims that the Character and Fitness Committee was collaterally estopped from reviewing any evidence pertaining to her character and fitness except that contained in her reapplication of May 2003.[3] The Committee argues that per our Order they conducted a "de novo" review of all issues upon Ms. Strasser's reapplication, which included consideration of previous applications and behavior in addition to any new revelations.

### I. Fitness

■ As to Ms. Strasser's fitness, the Committee claims that she failed to prove the present mental and emotional fitness to practice law. The Committee's conclusion is based on Seven Counties' recommendation that she join Alcoholics Anonymous. Moreover, the Committee highlights that its decision was based on several incidents of domestic violence between herself and Mr. Ward, some of which she may have instigated. It is important to note that Ms. Strasser ended her relationship with Mr. Ward in March of 2003.

■ The purpose of requiring an applicant's fitness is to exclude from the practice of law any person having a mental or emotional illness or condition, which would be likely to prevent the person from carrying out duties to clients, courts or the profession.[4] Although Ms. Strasser sought and was treated for alcohol and relationship problems by counselor Tomeca Runyon, it does not mean that she is unfit to practice law. Moreover, Ms. Strasser is in counseling. There is nothing to suggest that her past problems with alcohol and domestic violence interfere with her present ability to practice law. The substantial fact that she has sought treatment and lack of any incidents to this date show a strong attempt to demonstrate that she is fit to practice law. Additionally, Ms. Strasser has presented evidence in the form of letters from employers and others in the legal community that she has conducted herself in a professional and competent manner.

### II. Character

The Committee offers that Ms. Strasser provided false statements to the police regarding an April 1999 incident of falling or being pushed from some steps; or that she gave false testimony in a deposition in two civil cases in April 2002 and in June 2003. In her motion, Ms. Strasser explains that

---

3. Ms. Strasser claims that by this Court's Opinion and Order dated March 20, 2002, the Committee should be collaterally estopped from revisiting her participation in the escort business and her lack of candor on two law school applications. The basis of this request

is because we stated in our opinion that Ms. Strasser had reformed her life and should be admitted to practice law.

4. SCR 2.011(2).

she was unsure or unclear of the events that took place about which she filed a complaint against a former boyfriend with the Indiana Police and with an Indiana court in a civil lawsuit. Ms. Strasser was treated for a miscarriage at Baptist Hospital East the day after the fall. In a subsequent civil claim against the homeowner's insurance company, she stated that her boyfriend did not push her,[5] but stated in a different deposition in relation to a civil case that he did push her down the steps.[6] Ms. Strasser also testified before the Committee that her former boyfriend had pushed her and attempted to clear up any discrepancies. During the hearing before the Committee, she admitted her former lapses in veracity to the committee:

> I had stated in the deposition that I had lied to the police officer about being pushed. And I didn't think that was an accurate statement because I didn't lie to the police officer about being pushed. But then I wasn't completely correct in not explaining to him that I had also fallen off the stairs. So I don't think it still gave an accurate version of what took place. That's why I didn't sign it and that's why I dismissed the case because I didn't feel comfortable proceeding with a case that I really wasn't sure what took place.
>
> \*   \*   \*   \*   \*   \*
>
> I didn't sign the deposition because at the time that the police were called out, I told the police the truth, as I knew it at the time, that Bryan pushed me. Subsequent to that happening, Bryan

and I had spoken to each other. He had told me that he didn't want to get in trouble. He had told me that he didn't think that he had pushed me, that he thought that I had fallen both times ... And that is when I said to him, 'Well, that means I wasn't completely accurate with the police....' Then when I went and gave this deposition and went by, you know partially what Mr. Kessinger told me what happened which would mean that I didn't tell the police that I had also fallen on the steps... I ... just decided because Bryan's not clear what happened ... I am not clear what happened ... I immediately dismissed the case with prejudice.

On November 19, 2004, the Committee denied Ms. Strasser's application in part on this inconsistency.

We agree with the Committee that there is a discrepancy, but viewed in light of Ms. Strasser's explanation, it is not clear that she was intentionally deceptive. The deposition showing the discrepancy was taken three years after the event, and Ms. Strasser had been embroiled in domestic disputes with her former boyfriend. As she stated in the deposition, she was unclear of the events because she relied on others to obtain the full picture of what had transpired. In any event, in the end her story was clear that she had been pushed and these discrepancies do not indicate any clear wrongdoing or deceit on the part of Ms. Strasser. As Ms. Strasser has demonstrated a sincere effort to im-

---

5. Her claim against the homeowner's insurance company (Mr. Kessinger) alleged that she was injured as a result of faulty stairs and the failure of the homeowner to exercise due care.

6. She claims that at some time after filing the civil suit on April 9, 2001 against Mr. Kessinger, her boyfriend had stated that he had pushed Ms. Strasser. Three years later Ms.

Strasser was deposed on the issue. Although it is not clear, the Kessinger deposition must have shown to Ms. Strasser that she lied to Washington County Police concerning who had pushed her. She claims that after she read the deposition (presumably of Mr. Kessinger) she did not feel comfortable signing her deposition and decided to dismiss the lawsuit.

prove her life, we order that she be conditionally admitted pursuant to SCR 2.042 to the practice of law in Kentucky. It is hereby ordered that

1. Ms. Strasser shall provide the Committee with a formal monitoring plan. In this formal monitoring plan, Ms. Strasser shall submit the names of a mentor group of three or more attorneys that would oversee Ms. Strasser's legal work and supervise her behavior. As part of that mentor group, Ms. Strasser shall also submit the name of a counselor, psychologist, or psychiatrist who will supervise her behavior and meet with her on a regular basis to monitor alcohol abuse and relationship issues. Ms. Strasser's admission would only be conditional on her working at the level required by the team of mentor attorneys and her attendance of counseling on a regular basis. The mentor group shall report any questionable behavior to the Kentucky Bar Association. This plan shall be submitted within thirty days after this Order.

2. Ms. Strasser shall attend counseling for a duration necessary, as determined by the licensed counselor, psychologist, psychiatrist, or the Kentucky Lawyers Assistance Program (KYLAP), but in no event shall that period result in a counseling of Ms. Strasser for less than two years after this Order;

3. Ms. Strasser shall provide the Committee with proof of compliance with such plan in accordance with its terms for a period of time not to exceed one year from the enactment of the plan. At the completion the term, Ms. Strasser may apply to this Court for unconditional admission to the practice of law in Kentucky.

LAMBERT, C.J., and JOHNSTONE, KELLER, and SCOTT, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which COOPER and GRAVES, JJ., join.

ENTERED: April 21, 2005.

/s/ Joseph E. Lambert
    Chief Justice

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion that conditionally admits the movant to the practice of law in Kentucky because the Character and Fitness Committee has thoroughly considered all the evidence in this matter and correctly concluded that she has not met her burden of proof to establish fitness to practice law.

This Court has plenary and exclusive authority to regulate the practice of law in the Commonwealth of Kentucky. This power brings the responsibility of safeguarding the public interest from admitting lawyers to the practice of law that possess insufficient character and fitness. Furthermore, "[d]ue to the vital social interests at stake, any doubts as to a petitioner's fitness to practice [law] should be resolved in favor of the public and the court." *In re Olkon*, 605 F.Supp. 784 (D.Minn.1985), citing, *In re Isserman*, 345 U.S. 286, 289, 73 S.Ct. 676, 677, 97 L.Ed. 1013 (1953); *In re G.L.S.*, 586 F.Supp. 375, 379 (D.Md.), *aff'd*, 745 F.2d 856 (4th Cir. 1984). A majority of the Character and Fitness Committee has expressed serious doubts as to the fitness of the movant to practice law at this time.

The purpose of Character and Fitness screening is to protect the public trust and safeguard the administration of justice. SCR 2.011(1) states in pertinent part, "The purpose of requiring an applicant to possess good moral character is to exclude from the practice of law those persons possessing character traits that are likely to result in injury to future clients, in the obstruction of the administration of justice, or in a violation of the Code of Professional Responsibility." SCR 2.011(2) states in pertinent part, "Fitness is the assessment

of mental and emotional health as it affects the competence of a prospective lawyer. The purpose of requiring an applicant to possess this fitness is to exclude from the practice of law any person having a mental or emotional illness or condition which would be likely to prevent the person from carrying out duties to clients, Courts or the profession."

Our requirements are not unique among the other states. *See, e.g., In re Singer*, 819 So.2d 1017 (La.2002) ("The primary purpose of character and fitness screening is to assure the protection of the public and to safeguard the administration of justice."); *In re Silva*, 266 Neb. 419, 665 N.W.2d 592 (2003) ("The primary purposes of character and fitness screening before admission to the bar of Nebraska are to assure the protection of the public and to safeguard the justice system [...] The public interest requires that the public be secure in its expectation that those who are admitted to the bar are worthy of the trust and confidence clients may reasonably place in their attorneys."); *In re Littlejohn*, 261 Wis.2d 183, 661 N.W.2d 42 (2003); *In re Dortch*, 199 W.Va. 571, 486 S.E.2d 311 (1997); *In re Lane*, 249 Neb. 499, 544 N.W.2d 367 (1996); *In re Prager*, 422 Mass. 86, 661 N.E.2d 84 (1996); *Clark v. Virginia Bd. of Bar Examiners*, 880 F.Supp. 430, 63 USLW 2546 (E.D.Va. 1995). This list is only representative.

This Court is therefore charged with responsibility to the public for those who we allow to be their counselors and advocates before the Court. This responsibility extends primarily to our own citizens, but a weakness here ripples out into society and affects the view of the general public of the legal profession.

This is the second time that this Court and the Character and Fitness Committee have reviewed the eligibility of the movant to be admitted as a lawyer in Kentucky. As the process continues, new adverse information keeps appearing about the movant which reflects a lack of candor with the Committee and the Court. Moreover, some of the adverse information led a majority of the Character and Fitness Committee to conclude that she has failed to demonstrate that she benefited from counseling to address problems of both her remote and recent past.

Initially, the movant appealed an adverse determination by the Character and Fitness Committee. At that time, the Committee had based its decision on evidence regarding movant's participation in an escort service and her lack of candor in disclosing this information to law schools and to the Committee. By a 5 to 1 vote, this Court rejected the recommendation of the Committee and ordered that her application to the Kentucky Bar Association be granted and that her examination grades be released. She failed the multi-state portion of the examination and was thus denied admission on that ground.

The movant reapplied for admission on May 13, 2003, and in July 2003, successfully passed the multi-state examination under written waiver that specified that her score would not be released until she was certified as to character and fitness. The Committee conducted additional investigations into her background since March 20, 2003, as well as one additional hearing. Its recommendation to deny admission was made only after very careful consideration of all the evidence presented during the initial investigation and the evidence obtained subsequently during the second investigation.

This second investigation revealed new adverse evidence that showed movant had been untruthful a number of times during the period from 1999 to 2003 regarding an incident of falling or being pushed down the steps of a house trailer.

On the night of the fall, the movant had called Indiana police and filed a complaint stating that her boyfriend pushed her down the stairs. However, her description of the event changed when she sought insurance recovery.

In her deposition filed in an Indiana civil case seeking recovery from a homeowner's insurance company, the movant alleged her damages were caused by falling from the steps as she walked to her vehicle. Upon questioning, she described in great detail that she traveled to the mobile home shared by her boyfriend and another man in order to tell her boyfriend that she was pregnant. She testified that she turned to leave and fell down the rickety steps. She had called police to report the incident, but testified in the civil case, "I lied and told them that Bryan pushed me." She testified that she lied because she was upset and angry.

Among the other problems presented by the evidence are a failure to make complete disclosure in a timely manner, and a pattern of omitting various significant details from her applications to law schools and to be admitted to the bar. Her first law school application admitted having been charged with a DUI in 1996, but she disavowed any other violations. Later, she filed an amendment to her application stating that she had been arrested for failure to appear for a traffic court violation. Subsequently, she applied for admission to another law school in 1999 and acknowledged a DUI charge and again affirmatively stated that she had not been charged with any other violations. In yet another application to be a legal intern, she disclosed the DUI charge and stated that in 1990 she was arrested for being a runaway. Finally, in her application for admission to the Kentucky Bar, she again disclosed the 1996 DUI and also that she had been arrested and cited for a misdemeanor charge of prostitution that was dismissed

without prejudice after her admission that probable cause existed for the arrest. While she consistently disclosed the DUI charge, no application mentioned above contains a full disclosure of facts.

On two separate occasions, the Committee requested further information about the prostitution charge but she refused to provide an explanation other than to say the record was being expunged. Later, she admitted that she had been involved in an escort service.

On her bar application, she stated that she had not been a party to any civil proceeding. Two months later, she filed the civil lawsuit mentioned above against her former boyfriend and others for damages from the fall. Although she became a plaintiff against the insurance company, she did not amend her application to include this information.

In her reapplication, she disclosed information regarding a criminal complaint made against her by a former boyfriend, as well as information regarding a civil complaint in Jefferson Circuit Court. This reapplication did not disclose any information about the civil lawsuit in Indiana.

There was also testimony from the movant regarding her consumption of large amounts of alcohol.

Based on all this evidence, the Committee concluded that she continued to engage in dishonest conduct and that she was not truthful in answering the questions on her reapplication. The Committee noted that her lack of candor was not limited to her answers on her reapplication, but that she did not disclose the civil litigation in her prior character and fitness determination as required. She was also not truthful in her deposition in her civil and criminal cases. It also noted that the failure to be truthful continued as a pattern when she failed to disclose her full record of legal

problems relating to the escort service and her activities therein on her law school applications.

The Committee concluded that she did not meet the burden of proof to establish that she possesses the good moral character necessary to be admitted to the Kentucky Bar. The evidence presented here shows that doubts persist as to her present character and fitness to practice law. These doubts should be construed in favor of the public and the courts and her application denied. *Isserman, supra.*

The admission system in Kentucky has been more than accommodating regarding those applicants who are challenged by physical, mental, medical, emotional, and ethical disabilities. The major responsibility of the applicant is to be forthcoming and truthful in providing answers to the Committee's requests. It is our responsibility to maintain the public trust in the legal profession by closely guarding admission from those exhibiting serious doubts as to their candor with the courts.

Our Commonwealth enjoys comity and reciprocity with members of the legal profession of other states. Among these states, members of their bar associations may enter the practice of law in Kentucky without examination and vice versa. *See, e.g.,* SCR 2.110. Admission to the practice of law must be kept to a standard of character and fitness lest we become suspect as to reciprocity with other states or in the eyes of the public, which relies on us to safeguard the legal profession. What follows are some of the cases other states have decided on similar facts.

Omissions on applications tend to reflect poorly on character and fitness. "Evidence of false statements, including material omissions, and lack of candor in the admissions process reflect poorly on an applicant's present character, fitness, and moral qualifications." *In re Bagne,* 102 Ohio St.3d 182, 808 N.E.2d 372 (2004) *cit-*

*ing In re Panepinto,* 84 Ohio St.3d 397, 704 N.E.2d 564 (1999); *In re Cvammen,* 102 Ohio St.3d 13, 806 N.E.2d 498 (2004). Even one incomplete answer can lead to the disapproval of an admission application if the applicant does not fully and honestly explain when the opportunity arises. *See, e.g., In re Ireland–Phillips,* 71 Ohio St.3d 609, 646 N.E.2d 453 (1995).

In *Bagne, supra,* the applicant failed to disclose fully the details of an incident between himself and a jogger 11 years prior to bar application where the jogger had been injured. The Board determined he had committed a crime and that he had provided incomplete facts and false statements to law enforcement and the Michigan Bar previously. It accordingly denied his application, noting that the Michigan Bar had done so previously. It did allow him to reapply on recommendation of the Character and Fitness committee.

In *Cvammen, supra,* the Ohio Supreme Court held that false and incomplete answers in a bar application and an interview to take the bar examination, and continued attempts to avoid truth, established lack of integrity for admission to practice law on a permanent basis. That applicant had not fully and truthfully answered questions about the circumstances surrounding his forced resignation from employment with a real estate company. It held that "A hearing to determine character and fitness should be more of a mutual inquiry for the purpose of acquainting this court with the applicant's innermost feelings and personal views on those aspects of morality, attention to duty, forthrightness and self-restraint which are usually associated with the accepted definition of 'good moral character.'" 806 N.E.2d at 501 *citing In re Davis,* 38 Ohio St.2d 273, 67 O.O.2d 344, 313 N.E.2d 363 (1974). Cvammen was effectively permanently disbarred prior to ever being admitted to sit for the bar exam.

Integrity, truthfulness, candor and sobriety should be the hallmarks of the legal profession. This Court, in reviewing the report of the Committee, should not substitute its own conclusions for those of the Committee except where they are clearly erroneous. That is not the case in this situation.

Certainly, it would be hoped that a candidate for admission to the bar with a troubled background can be rehabilitated over time. It is only common sense that recovery from a long history of ethical, alcohol or other problems is rarely quick or easy. The potential for relapses is always present. It is difficult to see how effective rehabilitation could occur simultaneously with the establishment of a law practice that involves direct contact with clients for legal services.

Under all the circumstances, I must agree with the decision of the Committee that the movant has not established the necessary burden of proof. Thus, admission should be denied at this time.

COOPER and GRAVES, JJ., join this dissenting opinion.