**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Scannell,* Slip Opinion No. 2016-Ohio-583.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2016-OHIO-583**

**IN RE APPLICATION OF SCANNELL.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Scannell,* Slip Opinion No. 2016-Ohio-583.]**

*Attorneys—Character and fitness—Failing to exercise good judgment in conducting personal legal affairs—Engaging in a pattern of dishonesty and misrepresentation involving lying to law-enforcement officers and court personnel—Application disapproved, with permission to reapply in two years on conditions.*

(No. 2015-0541—Submitted June 10, 2015—Decided February 23, 2016.)

ON REPORT by the Board of Commissioners on Character and

Fitness of the Supreme Court, No. 556.

_____

**Per Curiam.**

{¶ 1} John Richard Scannell of Cortland, Ohio, is a 2013 graduate of the University of Cincinnati College of Law. He has applied to register as a candidate for admission to the practice of law in Ohio and to take the July 2013 bar exam.

Two members of the Trumbull County Bar Association admissions committee interviewed Scannell on September 14, 2012, and provisionally recommended that he be approved as to his character and fitness to practice law. The full bar-association admissions committee issued a final report on May 13, 2013, recommending that he be approved.

{¶ 2} On July 2, 2013, the Board of Commissioners on Character and Fitness announced that it would exercise its sua sponte investigatory authority in accordance with Gov.Bar R. I(10)(B)(2)(e) to further investigate his character and fitness to practice law, and on July 15, 2013, the Office of Bar Admissions sent Scannell a letter advising him that he would not be permitted to take the July 2013 bar exam. Three weeks later, Scannell was cited for improper backing as the result of an automobile collision with a motorcycle.

{¶ 3} A panel of the board conducted hearings on June 6 and September 26, 2014—the first hearing focused on Scannell's conduct following his August 2013 automobile accident and the second focused on a fight he had with his girlfriend on a North Carolina beach in July 2012. The panel expressed some concerns regarding Scannell's candor and honesty with regard to the fight on the beach. But based on its findings that he knowingly made false statements to a magistrate and prosecutor about his automobile accident, gave false sworn testimony at the panel hearing as to what had transpired in court, and took efforts to have the traffic ticket for his accident issued in his father's name, the panel recommended that Scannell's pending application be disapproved and that he not be permitted to reapply to take the Ohio bar exam. The board adopted the panel's findings of fact and recommendation.

{¶ 4} Having thoroughly reviewed the record, we adopt the board's findings of fact and disapprove Scannell's pending bar exam application, but for the reasons that follow, we will permit him to reapply for admission to the Ohio bar in two years.

**Summary of the Proceedings**

{¶ 5} In the early evening of August 5, 2013, Scannell drove from his home in Cortland, Ohio, to his girlfriend's apartment complex in Cuyahoga Falls. Upon arriving at his destination, he pulled his truck in front of the driveway, stopped, put the truck in reverse, backed up, and collided with a motorcycle. Scannell immediately tried to assist the motorcyclist, Erik Richardson, who sustained minor injuries, and—worried about the negative impact the accident would have on his bar application—asked whether he could handle the incident privately by paying for the repairs to Richardson's motorcycle with cash or a check. Richardson declined the offer, informed Scannell that he was a former law-enforcement officer, and then called the Cuyahoga Falls Police Department to report the accident. The police arrived minutes after the collision and cited Scannell for improper backing.

{¶ 6} All the witnesses at the panel hearing admit the following facts are true: (1) Scannell was driving the truck that collided with the motorcycle, (2) no one other than Scannell was in the truck at the time of the accident, and (3) Scannell's father was at home in Cortland, Ohio, at the time of the accident. But on August 12, 2013, Scannell and his father traveled from Courtland to Cuyahoga Falls to attend mayor's court. When the magistrate called the case, both men approached the bench. Scannell's father, with Scannell at his side, informed the magistrate that he (the father) was driving the truck on August 5, 2013, and that the ticket should be issued to him—not to his son. He explained that when the police arrived at the scene of the accident, he was "over in the bushes throwing up" due to nausea he suffered as a result of chemotherapy treatment.

{¶ 7} Scannell did not inform the magistrate that his father's story was a complete fabrication in that his father was not driving the truck, was not a passenger in the truck, and was not even in Cuyahoga Falls the night of the accident. Instead, he supported his father's story by pointing to a map he had brought with him to indicate in which bushes his father had been throwing up.

**{¶ 8}** In his testimony before the panel of the Board of Commissioners on Character and Fitness, Scannell suggested that he had tried to bring the truth to the court's attention by insisting that he had told the magistrate that he had been "in control" of the truck and that he should be charged with the traffic offense. He also testified repeatedly that he had not told the magistrate that his father was driving on the night of the accident, but the panel found the testimony of Stacy McGowan, the prosecutor originally assigned to Scannell's traffic case, to be more credible. McGowan acknowledged that Scannell's father informed the magistrate that he was the one driving the truck that hit the motorcyclist, but she also recalled Scannell stating multiple times that his father was the driver. Further, she testified that when she asked Scannell why he had not told the police that his father was driving if that were the case, he told her that he was afraid his father would get arrested for driving while intoxicated because he was vomiting in the bushes. It is not clear whether any of Scannell's statements to the mayor's court magistrate were under oath. Before dismissing the traffic matter without prejudice, McGowan advised Scannell and his father that she was going to investigate the matter and that they would face criminal charges if they were lying about the incident. But she said that they both had assured her that Scannell's father had been the driver.

**{¶ 9}** At the panel hearing, Scannell and his father both testified that they returned to the police station and mayor's court the week of August 19, 2013, in an effort to secure a ticket in Scannell's name. But Diana Sudia-Smith, a Cuyahoga Falls Law Department employee, testified differently. She said that the father and son approached her as she was closing the courtroom late one afternoon and that both of them demanded that she dismiss the ticket against Scannell and reissue it against his father. Although both men interacted with Sudia-Smith, she reported that John Scannell spoke more than his father. Prosecutor John Chapman, who took over the case when McGowan went on vacation, testified that Scannell's father

submitted a written police report on August 19, 2013, stating that he was the driver who hit the motorcyclist.

{¶ 10} Ultimately, Scannell was charged with improper backing and obstructing official business in the Stow Municipal Court, and as part of a plea bargain, entered a plea of no contest to charges of improper backing and an amended charge of disorderly conduct. He was fined $250, $100 of which was suspended, and was sentenced to 30 days in jail, all suspended on the condition that he obey all laws for one year. Scannell's father was charged with obstructing official business but pleaded no contest to an amended charge of falsification. He was fined $1,000, with $500 of the fine suspended, and was sentenced to 180 days in jail, all of which was suspended on the condition that he obey all laws for one year.

{¶ 11} While acknowledging that Scannell presented a sad tale of a bright, hard-working young man with impressive letters of recommendation, the panel noted that during his June 2014 hearing, he was "combative, and at other times, rambling and unable to focus or respond to a straightforward question with a direct answer." The panel also reported that "[h]e was uncommonly nervous throughout the hearing." Based on the evidence adduced at that June hearing, the panel found that Scannell knowingly made false statements to the mayor's court magistrate and prosecutor on August 12, 2013 (although it is not clear from the record whether those statements were made under oath), gave false testimony at the panel hearing as to what transpired in the mayor's court, and gave false testimony regarding the efforts he and his father undertook to secure a traffic ticket in his father's name. Moreover, the panel stated that it was "compelled to recognize that this case involves more than just the exercise of poor judgment" and that "Scannell's actions unfortunately disclose dramatic and troubling questions about the Applicant's character."

{¶ 12} The panel reconvened on September 26, 2014, to hear evidence relating to a July 2012 altercation that Scannell had with his girlfriend on a beach in North Carolina.[1]  In his initial report to the office of bar admissions, Scannell claimed that he and his girlfriend were charged with disorderly conduct after they engaged in horseplay, argued over seashells, and had a sand fight.

{¶ 13} One week after he disclosed the incident, Scannell told his admissions-committee interviewers that witnesses and the authorities had had a "misunderstanding" as to whether there had been any physical violence during the incident.

{¶ 14} At the panel hearing, Scannell testified that his girlfriend had slapped him on the head and threw sand at him at the end of an argument.  He then embraced her in a bear hug to prevent her from hitting him and reminded her that during an earlier incident, she had promised him that he could have a "free slap" if she ever hit him again.[2]  He claimed that she told him to go ahead and that when he made the motion of slapping her, only the very tip of his finger grazed her chin.  In her written statement to the park ranger, the girlfriend confirmed that she had told Scannell, "Go ahead, I'd like to see you do it," but reported that he had struck her on the face with his open hand.  Witness reports unequivocally supported the girlfriend's version of events.

{¶ 15} Although Scannell denied that he was intoxicated at the time of this incident, he admitted that he had been drinking.  His girlfriend, in contrast, testified that they were both intoxicated, and the National Park Service incident record reflects that law-enforcement officers arrived and placed Scannell in handcuffs, took him off the beach, and placed him in a cruiser.  When Scannell was removed

---

[1] Although Scannell was represented by counsel at the first hearing, he proceeded pro se at the September 26, 2014 hearing.

[2] The panel found that the couple had a "tempestuous and somewhat abusive relationship in the past where hitting one another was not uncommon."  Indeed, in the course of the hearing, one panel member characterized the relationship as "toxic."

from that cruiser and placed in another vehicle to be transported to a detention center, he put his foot in the door to prevent the park ranger from closing it. His eyes were bloodshot, he was stumbling, and his speech was slurred. He refused to take a breathalyzer test and attempted to prevent his girlfriend from doing so, claiming that he was her lawyer—even though he had previously told the park rangers that he was a law student.

{¶ 16} Although Scannell was charged with disorderly conduct as a result of the incident, the charges were dismissed after he successfully completed a one-year pretrial diversion program that required him to complete 50 hours of community service and to submit to random substance-abuse testing. The panel acknowledged that it was not entirely clear what had transpired on the beach in July 2012. In fairness to Scannell, the panel noted that he was not able to cross-examine the witnesses who provided statements to law-enforcement officers, though he questioned the accuracy of their statements and was adamant that they were at least several hundred yards away from him and his girlfriend at the time of the incident. And although Scannell's sister and her fiancé were in the ocean less than 50 feet from the incident, the fiancé testified that neither of them saw or heard the altercation. The panel ultimately found that Scannell's testimony was not credible and determined that at a minimum, his update to his application submitted in September 2012 describing what had happened as a "sand fight" raised additional questions about his candor.

{¶ 17} On these facts, the panel found that Scannell failed to provide complete and accurate information concerning his past, made false statements, including omissions, and lacked candor during the admissions process. *See* Gov.Bar R. I(11)(D)(3)(g) and (h) and (4)(i). Based on these findings, the panel concluded that there is a significant deficiency in Scannell's honesty and trustworthiness. Therefore, the panel recommended that his application to register as a candidate for admission to the practice of law be disapproved and that he not

be permitted to reapply. The board adopted the panel's findings of fact and its recommendations.

**Disposition**

**{¶ 18}** An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id.*

**{¶ 19}** Applicants must establish the ability to exercise good judgment in conducting their professional business; the ability to conduct themselves with a high degree of honesty, integrity, and trustworthiness in their professional relationships and with respect to all legal obligations; the ability to conduct themselves with respect for and in accordance with the law and the Ohio Rules of Professional Conduct; the ability to avoid acts that exhibit disregard for the health, safety, and welfare of others; and the ability to conduct themselves professionally and in a manner that engenders respect for the law and the profession. Supreme Court of Ohio, *Definitions of Essential Eligibility Requirements for the Practice of Law*, Requirement Nos. 3, 4, 5, 6, and 10, http://www.supremecourt.ohio.gov/AttySvcs/admissions/pdf/ESSENTIAL_ELIG IBILITY_REQUIREMENTS.pdf (accessed Jan. 12, 2016).

**{¶ 20}** The evidence shows that Scannell failed to exercise good judgment in conducting his personal legal affairs, failed to conduct himself with a high degree of honesty, integrity, and trustworthiness, and, in fact, engaged in a pattern of dishonesty and misrepresentation that involved lying to law-enforcement officers and court personnel—a pattern that continued throughout these admissions

proceedings. Therefore, we find that that he has failed to carry his burden of proving that he presently possesses the requisite character, fitness, and moral qualifications to practice law. *See In re Application of Bagne,* 102 Ohio St.3d 182, 2004-Ohio-2070, 808 N.E.2d 372 (application denied and applicant permitted to reapply in three years based on false statements to law-enforcement personnel and false testimony during admissions hearings in both Michigan and Ohio); *In re Application of Cvammen*, 102 Ohio St.3d 13, 2004-Ohio-1584, 806 N.E.2d 498, ¶ 22 (permanently denying application to register as candidate for admission to the Ohio bar because ethical infractions so permeated the admissions process that the applicant's honesty and integrity were shown to be intrinsically suspect).

**{¶ 21}** Accordingly, we disapprove Scannell's pending application to sit for the bar exam, but we will permit him to reapply in two years, provided that he (1) submits to a mental-health evaluation by a licensed psychiatrist or psychologist selected by the board, (2) submits a new application to register as a candidate for admission to the practice of law that includes a report of the findings of his mental-health evaluation, and (3) completes a new character and fitness examination, including an investigation by the National Conference of Bar Examiners.

Judgment accordingly.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., dissents and would not permit the applicant to reapply.

_____

John Richard Scannell, pro se.

William J. Danso, Trumbull County Assistant Prosecuting Attorney, for Trumbull County Bar Association.

_____