**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Baudendistel,* Slip Opinion No. 2014-Ohio-5200.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5200

IN RE APPLICATION OF BAUDENDISTEL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Baudendistel,* Slip Opinion No. 2014-Ohio-5200.]**

*Attorneys—Character and fitness—Lack of candor during admissions process— Pending application to take the bar exam disapproved—Applicant may apply to take the July 2015 or later bar exam.*

(No. 2014-0424—Submitted May 28, 2014—Decided November 26, 2014.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 562.

_____

**Per Curiam.**

{¶ 1}  Thomas Donald Baudendistel of Cincinnati, Ohio, has applied to register as a candidate for admission to the practice of law in Ohio.  In his application, he reported a March 2010 Kenton County District Court, Kentucky, conviction for reckless operation, which had been reduced from a charge of

driving under the influence of alcohol ("DUI"), and a September 2010 Franklin County Municipal Court conviction for possession of an open container of beer.

{¶ 2} A two-person panel of the Cincinnati Bar Association admissions committee interviewed Baudendistel on June 5, 2012, and issued a provisional report indicating that he possessed the requisite character, fitness, and moral qualifications for admissions to the practice of law, making no mention of his convictions. Therefore, the admissions committee provisionally approved his registration application. And after Baudendistel applied to take the July 2013 bar exam, the admissions committee recommended final approval of his application on May 16, 2013. It therefore appeared that he would sit for the July 2013 bar exam.

{¶ 3} But on June 19th, Baudendistel sent an e-mail update of his application to the Board of Commissioners on Character and Fitness to report that he had been charged with failure to control a motor vehicle and leaving the scene of an accident after crashing his vehicle into a parked car at 3:30 a.m. on June 6th.

{¶ 4} Baudendistel was not permitted to take the July 2013 bar examination, and on August 14, the board, sua sponte, commenced an investigation pursuant to Gov.Bar R. I(10)(B)(2)(e). Having completed that investigation and expressed concerns about Baudendistel's truthfulness, the board now recommends that we disapprove his pending application but permit him to apply for the February 2015 bar examination. We adopt the board's recommendation that Baudendistel be permitted to reapply, but rather than permitting him to apply for the February 2015 bar exam, we will permit him to apply for the July 2015 bar exam.

### Criminal Charges Linked to Alcohol

{¶ 5} At the hearing on this matter, Baudendistel testified about the three instances that led to his being charged with criminal conduct.

**{¶ 6}** The first incident was an automobile accident in December 2009. Baudendistel testified that he had been driving to pick up a friend who could not drive because he had been drinking. He crashed into another vehicle, causing property damage to both vehicles, but no injuries, and was charged with DUI. Baudendistel eventually entered a guilty plea to a lesser charge of reckless operation, was ordered to pay a modest fine of $274, and his parents did not permit him to drive for six months. He admitted that he probably should have been convicted of the DUI offense and acknowledged that he was fortunate that he did not hurt anyone or receive a harsher punishment. Baudendistel candidly admitted that he had previously driven after drinking alcohol, but claimed that this incident was the last time that he had driven while impaired.

**{¶ 7}** Baudendistel's second offense was a citation for having an open container of beer on the sidewalk in front of his brother's residence in August or September 2010. He testified that he had rented a bus to drive himself, his brother, and their friends to their destination for his brother's bachelor party but that as the group got off the bus and walked on the sidewalk, they were stopped and cited by an undercover police officer for their open containers. He described the episode as a combination of bad luck and bad decision-making.

**{¶ 8}** The third and final event occurred in June 2013, just weeks before Baudendistel was scheduled to take the July 2013 bar examination. He testified that he and several friends from law school met for dinner at the home of a friend of a friend to celebrate their graduation. From 6:30 p.m. until about 9:00 p.m., five of them drank a 12-pack of beer. He admitted that he had drunk two or three beers and explained that he had not been getting much sleep at the time, as he was working two jobs and studying for the bar exam. Consequently, he fell asleep at the house sometime around midnight.

**{¶ 9}** Baudendistel testified that he awoke sometime between 3:00 a.m. and 3:15 a.m. and left in the pouring rain to drive approximately one-half mile to

his home. He swerved to avoid an oncoming car and struck another vehicle parked on the street. He stopped about 100 feet down the road to make sure that he had not hit a person or caused serious damage. He stated that he had turned at the next intersection with the intent to return and inspect the damage to the other car, but discovered that his car was too damaged to drive any further.

{¶ 10} In hindsight, Baudendistel acknowledged that he should have called the police or at least called someone to bring him a pen and paper so that he could leave a note on the damaged vehicle, but he could not explain why neither of those things occurred to him at the time of the accident. In response to questioning from the panel, however, he acknowledged that he had thought about calling the police, but said, "I knew if I left a note, I wouldn't have [to report] it to the police. And, again, ironically and stupidly I didn't want to present any issues with the Board of Character and Fitness so I was going to take care of it through the insurance with that owner of the car."

{¶ 11} With his car immobilized and without the means to leave a written message, Baudendistel walked about a quarter of a mile home with, he testified, the intention of writing a note and returning to the crash site to leave it on the damaged vehicle. When he arrived at home, he plugged in his telephone, dried off, sat down to compose a note, and promptly fell asleep. He answered affirmatively when asked if he had sat down at his desk, but later testified that he had not been at his desk but in a moon-shaped chair in his room.

{¶ 12} Baudendistel testified that he awoke hours later in a panic and called his friend, who practices law in Kentucky, at approximately 8:00 or 8:30 a.m. to ask him what to do. On his friend's advice, he called the police to report the crash around 9:00 or 10:00 a.m. and learned that someone else had reported it earlier that morning. Baudendistel explained what had happened, provided his insurance information to the police, and offered to take a blood test. Despite his calling the police several times over the next few days, they did not follow up

4

with him until June 11th, when they asked him to come in and provide a statement. Baudendistel immediately went to the police department. After he gave his statement, the officer served him with citations for failure to control his vehicle and leaving the scene of an accident.

{¶ 13} On the advice of his counsel, Baudendistel entered a plea of not guilty, but at his character-and-fitness hearing, he admitted that he had committed the charged offenses. He testified that the charges had been dismissed because the prosecuting witness did not appear for a pretrial hearing.

{¶ 14} Because each of Baudendistel's run-ins with the law appears to have involved the use of alcohol, the hearing panel inquired about his history of alcohol use. He testified that he drank alcohol once during his sophomore year in high school but did not drink again until his senior year. In college, he drank once a week—usually on the weekend. Although he admitted that he occasionally drank to excess in college, he claimed that due to his workload in law school, he drank only once or twice a month, and to excess once every four months. At his hearing, he reported that he no longer drank to get drunk but occasionally has a beer or two. He noted that drinking was no longer the "feature of the event," as it had been in college, but was more incidental to other events in his life.

{¶ 15} Approximately one month after his panel hearing, Baudendistel submitted to a chemical-dependency and mental-health assessment performed by Stephanie Krznarich, a licensed chemical-dependency counselor and the clinical director of Ohio Lawyers Assistance Program, Inc. ("OLAP"). In a letter to the panel chairperson and the Office of Bar Admissions, Krznarich stated that Baudendistel had abused alcohol in the past, but that he appeared to understand the dynamics of his binge drinking and to have developed a more mature pattern of alcohol use. She found no chemical-dependency issues that would require him to enter into an OLAP contract at that time.

**Disposition**

{¶ 16} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id.*

{¶ 17} In determining that Baudendistel had not proved that he possesses the requisite character, fitness, and moral qualifications, the board considered the factors set forth in Gov.Bar R. I(11)(D)(3) and (4).

{¶ 18} The board noted that Baudendistel had apparently abused alcohol in the year and a half preceding his hearing before the board, but based on Krznarich's report, it believed that he was no longer abusing and was not dependent on alcohol.

{¶ 19} The larger issue, according to the board, is Baudendistel's lack of candor during the admissions process. The board found that his testimony regarding the June 2013 incident was "disjointed and frankly in many respects not entirely believable, as he himself acknowledged." The board was troubled by his conduct after the crash, which it interpreted as an attempt to conceal the fact that he had been drinking, and his efforts during his testimony to downplay the role of alcohol in the incident.

{¶ 20} The board's greatest concern, however, was the inconsistencies between Baudendistel's testimony and his June 19, 2013 e-mail reporting the hit-and-run incident to the board. While his testimony emphasized the fact that he had fallen asleep at the home of an acquaintance after drinking at a party with his friends, his earlier e-mail made no mention of that fact. Instead, his e-mail states

that following the accident, his "head began to throb in excruciating pain" so he walked home "intending to get medically checked out and to return to place a note on the car," but when he got home, his headache substantially subsided without medical attention, and he accidentally fell asleep. Baudendistel did not mention his excruciating pain or the fact that he had contemplated seeking medical attention in his testimony—until the panel members inquired about it near the end of the hearing. These omissions, combined with Baudendistel's admission that he was immediately concerned about how his June 2013 auto accident would affect the bar-admissions process, reinforced the board's belief that Baudendistel was not wholly candid and forthright about the incident. Based on this belief and the paramount importance of honesty and integrity in the legal profession and their primacy in assessing the character and fitness of an applicant for admission to the bar, the board found that Baudendistel had failed to carry his burden of proving that he currently possesses the requisite character, fitness, and moral qualifications for admission to the bar. Therefore, the board recommends that his current application be disapproved but that he be permitted to apply for the February 2015 bar examination.

{¶ 21} Because we agree that Baudendistel failed to provide complete and accurate information about his June 2013 auto accident, offering differing explanations for his conduct during the admissions process, and initially omitting the important detail that he had been drinking alcohol several hours before the crash, we agree that he has failed to prove that he currently possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio. *See* Gov.Bar R. I(11)(3)(g) (requiring an assessment of an applicant's character, fitness, and moral qualifications to include consideration of the applicant's failure to provide complete and accurate information concerning the applicant's past) and (h) (requiring the consideration of the applicant's false statements, including omissions).

{¶ 22} Accordingly, Baudendistel's pending application to take the bar exam is disapproved. He may apply to take the July 2015 or a later bar exam, provided that he submits a new application to register as a candidate for admission to the practice of law in accordance with Gov.Bar R. I(3) and is able to establish that he has the requisite character, fitness, and other qualifications.

Judgment accordingly.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., dissents and would allow the applicant to reapply for the July 2016 or a later bar exam.

_____

Keating, Muething & Klekamp, P.L.L., Richard L. Creighton Jr., and James M. Jansing, for applicant.

Rendigs, Fry, Kiely, Dennis, L.L.P., and Jonathan Phelps Saxton, for Cincinnati Bar Association.

_____