[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Coll,* Slip Opinion No. 2017-Ohio-4023.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-4023

IN RE APPLICATION OF COLL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Coll,* Slip Opinion No. 2017-Ohio-4023.]

*Attorneys—Character and fitness—Lack of candor during admissions process—Determination of necessity and relevance of information requested during admissions process is committed to sound discretion of this court, not to the applicant—Pending application to take bar exam disapproved—Reapplication permitted, for February 2018 bar exam.*

(No. 2016-1243—Submitted January 11, 2017—Decided May 31, 2017.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 643.

_____

**Per Curiam.**

{¶ 1} Applicant, Shamir Lee Coll, of Toledo, Ohio, is a 2015 graduate of the University of Toledo College of Law. He has applied to register as a candidate for admission to the practice of law in Ohio and to take the February 2016 bar exam. Two members of the Toledo Bar Association admissions committee interviewed

Coll on November 13, 2015, and the committee issued a provisional and final report recommending that he be approved as to his character and fitness to practice law.

{¶ 2} On February 19, 2016, the Board of Commissioners on Character and Fitness announced that it would exercise the sua sponte authority conferred upon it by Gov.Bar R. I(10)(B)(2)(e) to further investigate Coll's character and fitness to practice law.

{¶ 3} A panel of the board conducted a hearing on April 28, 2016, at which the inquiry focused on Coll's failure to detail on a form ("Form 5T") in the application each moving traffic violation he had received in the ten years immediately preceding his application. Based on its findings that Coll did not provide complete information on his past moving violations and that he made "provocative statements" of his personal beliefs on a supplement to his application that a bar-admissions specialist asked him to submit, the panel recommended that his application be disapproved but that he be permitted to reapply for the July 2019 Ohio bar exam. The board adopted the panel's findings of fact and recommendations.

{¶ 4} Coll objects to the board's consideration of statements of his personal beliefs that he made in his supplements to his application (Objection 1); the board's finding that he has failed to carry his burden of proving his character, fitness, and moral qualifications to practice law (Objections 2 through 4); the timing of the board's consideration of his application (Objection 5); and the board's recommendation that he be permitted to reapply for the July 2019 bar exam (Objection 6). The Toledo Bar Association has not filed a brief or otherwise responded to Coll's objections.

{¶ 5} Based solely on Coll's failure to provide complete and timely responses and updates to questions on his application to register as a candidate for admission to the bar, we find that he has failed to carry his burden of proving that he currently possesses the requisite character and fitness to practice law in the state

of Ohio.  Therefore, we disapprove Coll's pending registration application, but for the reasons that follow, we will permit him to reapply as a candidate for the July 2018 bar exam.

**Summary of the Proceedings**

{¶ 6} As the board noted, the incidents disclosed in Coll's application were "relatively benign" and do not raise significant concerns regarding his character or fitness to practice law.  For example, as an undergraduate at Bowling Green State University, Coll was cited for disorderly conduct after he argued with campus police officers, who had refused to help him pull his car out of the mud.  He pleaded no contest and was ordered to perform five hours of community service.

{¶ 7} Instead, the primary concern of the board and this court is Coll's failure to provide a complete response to the question of the application that asks whether the applicant has "been charged with any moving traffic violations that were not alcohol- or drug-related during the past ten years" and if so, directs the applicant to complete Form 5T.  Coll answered the question in the affirmative, and on an initial Form 5T, he provided his full name, Social Security number, and current Ohio driver's-license number.  But the form instructed him to provide additional specific information *for each violation*, including the name of the law-enforcement agency, the incident location (city, county, state or province, and country), the date of the incident, the charge(s) on the date of the incident, the date of final disposition (month and year), the charge(s) at the time of final disposition, the final disposition, and a description of the incident.  Instead, Coll reported that he had had moving violations in "Many Cities, Many Counties, OH," and he listed only one incident date and one disposition date for a 2012 speeding charge.

{¶ 8} On February 4, 2016, an Ohio bar-admissions specialist e-mailed Coll and informed him that the board had begun meeting to issue final approval for applicants seeking to sit for the February 2016 bar exam.  He also informed Coll that the board had requested that he fill out information for each of his prior moving

violations on separate Form 5Ts, noting that the information he had previously provided was "not specific enough" and that "[p]roviding this information could affect [his] ability to sit for the bar exam." Coll e-mailed a response to the bar-admissions specialist, attaching a single Form 5T that provided only his name, Social Security number, and driver's-license number, along with an abstract driver record from the Ohio Bureau of Motor Vehicles reflecting that he had had no moving violations in the previous three years.

{¶ 9} The next day, the bar-admissions specialist e-mailed Coll again to inform him that the information he had submitted was insufficient because it did not pertain to any specific traffic violations and because the abstract of his driving record covered only three of the ten years at issue. The bar-admissions specialist requested that Coll provide completed Form 5Ts for each violation that occurred during the ten-year period. In response to this second request for supplemental information, Coll sent an e-mail with two Form 5Ts that identified four traffic violations (two in 2008 and two in 2012) and provided some—but not all—of the requested information. Specifically, he failed to state the charges levied against him in the four incidents he identified, the dates of their final dispositions, and the final dispositions of the matters—i.e., the verdicts and sanctions (if any) that were imposed. It is also apparent from the exhibits and testimony Coll offered at the hearing that he had received additional citations that he never disclosed in his application or supplements—including two traffic citations that he received in May and July 2009.

{¶ 10} Another question on the registration application asks, "Have you ever been cited, arrested, charged, or convicted for any violation of any law including as a juvenile (except traffic violations)?" Under Gov.Bar R. I(2)(F), an applicant has a continuing duty to update the information contained in the application and promptly report all changes or additions to the Office of Bar Admissions. But Coll failed to timely disclose two fourth-degree misdemeanor

4

charges of undersize fishing and fishing in a closed zone that were pending against him at the time of his April 28, 2016 admissions hearing. He did, however, supplement his application after he was convicted of those offenses on June 3, 2016, and sentenced to ten days in jail (suspended) and two years of probation for each offense to be served consecutively. The board viewed Coll's delayed disclosure of these convictions as part of a pattern of nondisclosure that did not speak well of his character and fitness.

{¶ 11} In his testimony, Coll maintained that his registration application was complete because he provided his full name, Social Security number, and driver's-license number on the initial Form 5T. He argued that pursuant to Gov.Bar R. I, he had no obligation to provide any additional information and that once he had provided his identifying information, it was the duty of this court or its agents to investigate his past conduct. He asserted that the board breached its contract with him because he had paid the application fee in exchange for an investigation that, in his view, did not occur. Alternatively, he asserted that his driving record is of no consequence in measuring his overall character—particularly in light of the fact that the abstract of his recent driving history reflects his "rehabilitation" from his past violations.

{¶ 12} The board found that Coll's conduct and his stated reasons for failing to provide the information requested in the traffic-violation question are clear violations of an applicant's duty to cooperate and provide accurate and complete answers to all requested information. *See* Gov.Bar R. I(11)(D)(3)(g) (providing that an applicant's failure to provide complete and accurate information concerning the applicant's past is one factor to be considered in determining whether the applicant possesses the requisite character, fitness, and moral qualifications to practice law); Gov.Bar R. I(11)(D)(1) and I(12)(C)(6) (providing that an applicant's failure to provide requested information or otherwise to cooperate in proceedings before the admissions committee and the board may be grounds for a

recommendation of disapproval). The board also found that Coll willfully and deliberately chose not to answer the questions at issue and unilaterally decided which questions were pertinent to the admissions process—indeed, he testified that he could have submitted a Form 5T containing all the requested information but chose not to do so.

{¶ 13} The board determined that Coll's failure to understand his obligations as an applicant and the role of this court in the background investigation demonstrated an inability to understand the simplest terms of Gov.Bar R. I and the instructions for completing the application. In addition, the board suggested that his interpretation of the rule reflects "a degree of arrogance and disdainfulness for the Court that brings into serious question the applicant's maturity and judgment" as well as his readiness to represent clients in a professional manner.

{¶ 14} Coll objects to the board's findings, arguing that the disclosures in his application were sufficient and timely and that he has proven by clear and convincing evidence that he possesses the requisite character and fitness to practice law. He asserts that the board abused its discretion by failing to consider the factors set forth in Gov.Bar R. I(11)(D)(3) and (4) in evaluating his application and assigning weight and significance to his prior conduct. Coll also contends that the board's recommendation that he be permitted to reapply for the July 2019 bar exam is overly harsh in light of our decisions in cases involving applicants who omitted more serious conduct from their registration applications.

**Disposition**

{¶ 15} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). "An applicant's failure to provide requested information, including information regarding expungements and juvenile court proceedings, or otherwise to cooperate in proceedings before the admissions committee may be grounds for a

6

recommendation of disapproval." *Id.*; *accord* Gov.Bar R. I(12)(C)(6) ("An applicant's failure to provide requested information * * * or otherwise to cooperate in proceedings before the Board may be grounds for a recommendation of disapproval").

{¶ 16} Here, the evidence shows that Coll read the instructions on the registration application and Form 5T, which plainly directed him to disclose detailed information about each moving traffic violation he had received in the past ten years. But Coll chose not to disclose the requested information on his application or in his supplemental disclosures and inexplicably claimed—despite the plain instructions and the specificity of the application questions—that the only information he was required to provide was his name, his Social Security number, and his driver's-license number. Coll has failed to provide complete and accurate information that is responsive to the questions about his past conduct and thereby made false statements by omission. *See* Gov.Bar R. I(11)(D)(3)(g) and (h).

{¶ 17} Even more troubling than Coll's insistence that he had no duty to make the disclosures as directed in the registration application were his repeated, emphatic, and utterly false declarations that it was the board—and consequently this court—that had failed to faithfully discharge its duty to investigate his background.

{¶ 18} Coll adamantly refused to yield to the interpretation of Gov.Bar R. I established by this court and advanced by the panel, dismissing it as a mere "counterargument." But contrary to Coll's claims, the panel's interpretation of the rules and instructions is well rooted in the plain language of the rules and our jurisprudence. *See, e.g.*, Gov.Bar.R. I(11)(D)(1) and I(12)(C)(6); *In re Application of Watson*, 31 Ohio St.3d 220, 509 N.E.2d 1240 (1987), syllabus ("All information requested by any authorized committee, board or this court, reviewing the character and fitness of an applicant seeking to be admitted to the practice of law in Ohio, shall be fully, honestly and completely provided by the

applicant"). Indeed, the determination of the necessity and relevance of the information requested during the admissions process is committed to the sound discretion of this court—not to the applicant, as Coll would have us believe. *See* Ohio Constitution, Article IV, Section 2(B)(1)(g) (conferring original jurisdiction to this court over "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law").

{¶ 19} Moreover, an applicant's payment of the nonrefundable fees for registration as a candidate, for the bar-exam application, and for the National Conference of Bar Examiners ("NCBE") character investigation do not discharge his or her obligation to make an honest and complete disclosure of all information requested in the admissions process, as Coll asserts. *See* Gov.Bar R. I(2)(B)(4) and (5), I(3)(B)(6), and I(14)(A). On the contrary, the process relies on the applicant's honesty and candor in identifying past incidents of unlawful conduct to narrow the focus of our inquiry from every jurisdiction in the country (or beyond) to those jurisdictions that may actually possess relevant information about the applicant. And Coll's omissions impeded the bar-admissions investigation into his past conduct in this case.

{¶ 20} Coll's failures to disclose the requested information also raise significant questions about his cognitive capacity to learn, to recall what has been learned, to reason and to analyze, and to exercise good judgment and act in accordance with the law and the rules governing the practice of law—not only in his own professional affairs but also in the affairs that clients will one day entrust to him. Supreme Court of Ohio, *Definitions of Essential Eligibility Requirements for the Practice of Law*, Requirement Nos. 1 and 3, http://www.supremecourt.ohio.gov/AttySvcs/admissions/pdf/ESSENTIAL_ELIG IBILITY_REQUIREMENTS.pdf (accessed Jan. 30, 2017). His overt and profound disrespect for this court—even as he seeks the *privilege* of admission to the bar— also calls into question his ability to conduct himself with respect for and in

accordance with the Ohio Rules of Professional Conduct; his ability to conduct himself diligently and reliably in fulfilling all obligations to clients, attorneys, courts, and others; and his ability to conduct himself professionally and in a manner that engenders respect for the law and the profession. *Id.*, Requirement Nos. 5, 7, and 10. *See also Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 54 (recognizing that the practice of law is not a right but an extraordinary privilege bestowed by this court on those persons who meet the qualifications for admission and continue to maintain the standard of ethical conduct prescribed by the rules of the court).

{¶ 21} Gov.Bar R. I(11)(D)(4)(a) through (j) sets forth ten factors to be considered in determining the weight and significance to assign to an applicant's past conduct. Although Coll's traffic violations occurred more than three years before he submitted his registration application on August 27, 2015, his false statements by omission began on that date—when he was 24 years old and a third-year law student. Because these were not youthful indiscretions but the conscious decisions of a person just months away from completing law school, Coll's age at the time of his conduct and the recency of the conduct are significant. *See* Gov.Bar R. I(11)(D)(4)(a) and (b). The information regarding this misconduct is reliable, because he readily admits that he omitted requested information from his application. *See* Gov.Bar R. I(11)(D)(4)(c).

{¶ 22} There can be no doubt that Coll's lack of candor in the admissions process is serious, *see* Gov.Bar R. I(11)(D)(4)(d) and (i), because Gov.Bar R. I cautions applicants that "[a]n applicant's failure to provide requested information * * * may be grounds for a recommendation of disapproval," Gov.Bar R. I(11)(D)(1). The factors underlying his failures to disclose also weigh against approval of Coll's character and fitness, because he has maintained throughout the admissions process that he was required to provide nothing more than his name, Social Security number, and driver's-license number to this court. Moreover, he

has admitted that he *could have provided* the requested information but *chose not to*. *See* Gov.Bar R. I(11)(D)(4)(e). Similarly, Coll was aware that two misdemeanor fishing charges were pending against him at the time of his admissions hearing, but he chose not to disclose those relatively minor offenses at that time—despite his continuing duty to *promptly* update the information contained in his application, including the character questionnaire, *see* Gov.Bar R. I(2)(F). In isolation, those offenses appear minor, but Coll's failure to disclose them while being questioned under oath about his previous failures to disclose requested and relevant information about his past violations serves only to heighten our concerns about his character and fitness to practice law.

{¶ 23} Just three of the factors enumerated in Gov.Bar R. I(11)(D)(4) could weigh in favor of approving Coll's character and fitness: (1) the unlikelihood that the traffic violations omitted from his registration application, *if properly disclosed*, would have raised significant concerns about his character and fitness, (2) his present willingness to submit properly completed Form 5Ts, and (3) his recent service as a victim's advocate for Genesis House at the Lorain Municipal Court.[1] *See* Gov.Bar R. I(11)(D)(4)(g), (h), and (j).

{¶ 24} On these findings, we overrule Coll's second, third, and fourth objections to the board's report and adopt the board's finding that he has failed to carry his burden of proving that he presently possesses the requisite character and fitness to practice law in Ohio. We also overrule his first and fifth objections as moot and deny his pending application.

## Reapplication

{¶ 25} The board recommends that Coll be permitted to apply to take the July 2019 bar exam and submit a new registration application. The board further recommends that upon reapplication, Coll undergo a complete character and fitness

---

[1] At oral argument, Coll represented that he has already submitted to this court properly completed Form 5Ts, but they are not part of the record before us.

investigation, including an investigation by the NCBE to determine whether he possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio.

**{¶ 26}** Coll objects to this recommendation as overly harsh when compared to the delays required in other cases involving applicants who exhibited a lack of candor during the admissions process. He cites three cases in which applicants omitted more significant information from their registration or bar-exam applications but were permitted to reapply in three years or fewer. He therefore urges us to permit him to take the bar exam in 2017.

**{¶ 27}** In *In re Application of Steinhelfer*, 142 Ohio St.3d 120, 2015-Ohio-978, 28 N.E.3d 107, we denied an application to take the February 2013 bar exam based on the applicant's failure to submit all the documents that had been requested by the panel and his failure to timely disclose that he had (1) withdrawn from law school before his character and fitness interview and did not graduate because he failed to complete requirements in three courses—though he later completed his remaining coursework and graduated, (2) been terminated from a judicial campaign for unprofessional behavior, (3) been receiving Social Security disability benefits for a mental disorder, and (4) previously used a different name. Despite those omissions, we permitted Steinhelfer to reapply for the February 2016 bar exam, thus delaying his application by three years. *Id.* at ¶ 11.

**{¶ 28}** In *In re Application of Baudendistel*, 141 Ohio St.3d 101, 2014-Ohio-5200, 21 N.E.3d 1063, we denied an application to take the July 2013 bar exam because the applicant failed to provide complete and accurate information about an incident in which he crashed his vehicle into a parked car just weeks before he was scheduled to take the bar exam. Not only did Baudendistel offer differing explanations during the admissions process for his postaccident conduct, but he initially failed to disclose that he had been drinking alcohol several hours before

the crash. We permitted Baudendistel to reapply for the July 2015 bar exam, thus delaying his application by two years. *Id.* at ¶ 22.

**{¶ 29}** And in *In re Application of Grimsley*, 141 Ohio St.3d 94, 2014-Ohio-5033, 21 N.E.3d 1057, the applicant disclosed four alcohol-related offenses on his application to register as a candidate for admission to the bar, but he had disclosed just one of those offenses on his initial law-school applications and none of them on his subsequent transfer application. Grimsley took some steps to remedy his material omissions and eventually admitted that he had "deliberately chose[n] to err on the side of nondisclosure" in completing his law-school applications and that his conduct was dishonest. *Id.* at ¶ 11. Troubled by his equivocation about the wrongfulness of his actions, we denied his application to take the July 2013 bar exam and permitted him to reapply for the February 2015 exam, thus delaying his application by one and a half years. *Id.* at ¶ 12.

**{¶ 30}** Based on the evidence and testimony Coll presented during the panel hearing, it appears that the offenses he failed to disclose in his registration application were not as severe as the offenses that Steinhelfer, Baudendistel, and Grimsley failed to disclose and therefore, his objection to the board's recommendation that he be permitted to reapply for the July 2019 bar exam is well taken. Because we remain troubled by Coll's insistence that he had no obligation to disclose requested details about his past violations and his insistence that it is the obligation of the board, this court, or the NCBE to independently discover each of those violations based on minimal identifying information, we conclude that Coll would benefit from a " 'period of maturation' to develop the honesty, trustworthiness, and reliability necessary for successful admission to the bar." *In re Application of Zatik*, 126 Ohio St.3d 397, 2010-Ohio-3828, 934 N.E.2d 335, ¶ 8. Therefore, to the extent that he seeks approval to take the bar exam in 2017, we overrule his sixth objection. We will, however, permit him to reapply for the July 2018 bar exam.

**Conclusion**

**{¶ 31}** Accordingly, we disapprove Coll's pending application to take the bar exam. He may apply to take the July 2018 bar exam, provided that he submits a new application to register as a candidate for admission to the practice of law. Upon reapplication, he shall undergo a complete character and fitness investigation, including an investigation and report by the NCBE to determine whether he possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio.

Judgment accordingly.

KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

O'DONNELL, J., concurs in part and dissents in part, with an opinion joined by O'CONNOR, C.J.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

**{¶ 32}** Respectfully, I have a different view of this case. I concur in the judgment to disapprove the current application filed by Shamir Lee Coll, but contrary to the majority, I would permanently preclude this applicant from submitting an additional application for admission to the practice of law in the state of Ohio.

**{¶ 33}** This court has recognized that "the practice of law is an extraordinary privilege bestowed by this court upon one who meets the qualifications for admission and continues to maintain the standard of ethical conduct as prescribed by the rules of the court." *Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 54. For this reason, an applicant seeking admission to the practice of law in Ohio shoulders the heavy burden "to prove by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." *In re*

*Application of Blackwell*, 116 Ohio St.3d 530, 2007-Ohio-6041, 880 N.E.2d 886, ¶ 32.

**{¶ 34}** This court requires "the applicant's forthright, conscientious participation" in the character and fitness review process. *In re Application of Bonetti*, 117 Ohio St.3d 113, 2008-Ohio-503, 881 N.E.2d 1249, ¶ 9, citing Gov.Bar R. I(12)(C)(6). As we explained in *In re Application of Corrigan*, 47 Ohio St.3d 32, 546 N.E.2d 1315 (1989),

> "We view such proceedings as being different from the adversary contest associated with, for example, disciplinary cases. A hearing to determine character and fitness should be more of a mutual inquiry for the purpose of acquainting this court with the applicant's innermost feelings and personal views on those aspects of morality, attention to duty, forthrightness and self-restraint which are usually associated with the accepted definition of 'good moral character.' *Such a view commands the utmost in cooperation between the applicant and the board, and leaves little room for the employment of doctrines which work to keep relevant information from the board.*"

(Emphasis added in *Corrigan*.) *Id.* at 34, quoting *In re Application of Davis*, 38 Ohio St.2d 273, 274-275, 313 N.E.2d 363 (1974).

**{¶ 35}** Thus, "[t]he importance of an applicant's cooperation in the hearing process cannot be overstated." *In re Application of Harris*, 101 Ohio St.3d 268, 2004-Ohio-721, 804 N.E.2d 429, ¶ 13. We therefore have "disapproved bar applications in which applicants failed to disclose requested information in a forthright and complete manner." *In re Dabney*, 107 Ohio St.3d 40, 2005-Ohio-5834, 836 N.E.2d 573, ¶ 14, citing *In re Application of Williams*, 95 Ohio St.3d

107, 766 N.E.2d 143 (2002), and *In re Application of Ireland-Phillips*, 71 Ohio St.3d 609, 646 N.E.2d 453 (1995). "Even one incomplete answer can lead to the disapproval of an admission application if the applicant does not fully and honestly explain when the opportunity arises." *In re Application of Bagne*, 102 Ohio St.3d 182, 2004-Ohio-2070, 808 N.E.2d 372, ¶ 23.

{¶ 36} Accordingly, in *Harris*, we disapproved an applicant who failed to produce financial information and records requested by the Board of Commissioners on Character and Fitness during the character and fitness investigation but allowed him to reapply for admission after filing an entirely new application to register as a candidate for admission and undergoing a new character and fitness evaluation. *Harris* at ¶ 15. In *Dabney*, we revoked Dabney's Ohio license to practice law after the State Bar of Nevada discovered that she had not disclosed on her Nevada bar application her five arrests for prostitution-related offenses in the state of New York. *Dabney* at ¶ 3, 13. She voluntarily revealed that information to this court in an amendment to her Ohio bar application, prompting this court to revoke her law license. *Id*. at ¶ 4, 15. After we revoked her license to practice law, we permitted her to reapply for admission. *Id*. at ¶ 15. This court disapproved the application in *Williams* because the applicant did not disclose "in a forthright and honest manner" that he had been asked to resign from the Huber Heights police force after he "engaged in some indiscreet activity" with a teenager. *Williams* at 107-108. Williams was permitted to reapply after a two-year hiatus. *Id*. at 108. The application in *Ireland-Phillips* was disapproved because the applicant failed to fully explain a judgment entered against her for cashing a check with a forged indorsement, but the court permitted her to reapply two years later. *Ireland-Phillips* at 610-611. And in *Bagne*, we disapproved the application based on the applicant's "reluctance to respond with total honesty" and his lack of candor in giving inconsistent accounts of conduct that resulted in an aggravated assault

conviction entered 11 years before he applied to take the Ohio bar exam, and we permitted him to reapply after a three-year hiatus. *Bagne* at ¶ 23-24.

{¶ 37} Thus, the court has considered cases involving a failure to produce financial records, a concealment of prior prostitution-related offenses, the failure to disclose information in a forthright manner relating to resignation from employment, and the failure to fully explain a judgment resulting from a forged instrument. But none equate with a deliberate or persistent refusal to disclose the description of prior offenses combined with an explanation that the duty to uncover those details somehow belonged to this court.

{¶ 38} Coll had been charged with traffic violations during the ten years preceding his application, and therefore, when he applied for admission to the bar, his application required him to complete and submit along with his application Form 5T by providing specific information for each incident, including the name of the law-enforcement agency, a description of the incident, the charges originally filed, and the final disposition. But rather than provide a separate Form 5T for each incident, he simply indicated that he had traffic violations in "Many Cities, Many Counties, OH."

{¶ 39} The Office of Bar Admissions twice informed Coll that he needed to complete a separate Form 5T for each violation, but he did not do so. As he later explained to the hearing panel reviewing his application, although he understood that he had not provided all of the information required by the application, he "didn't feel like [he] had to." He noted that the blanks he left on his application were "a pattern. That's not ignorance. There's a pattern to these answers." Coll also admitted that he "certainly could have provided all this information, [but he] just chose not to," believing that he had the right not to answer any factual question on the application.

{¶ 40} Coll thus purposefully and knowingly failed to disclose information on his application. And, rather than cooperate in the review of his character and

fitness, he persisted in his refusal to disclose the requested information, based on his mistaken belief that his driving record for the past ten years was not material to his fitness to be an attorney and that he had provided sufficient information for the board and this court to conduct its own investigation into his offenses. Further, he maintained that posture during oral argument before this court. Having failed to fully participate in the character and fitness review process by providing incomplete answers, he cannot sustain his burden to demonstrate that he is qualified for admission. I therefore concur with the court's decision to disapprove Coll's application.

**{¶ 41}** Respectfully, I dissent from the majority's decision to permit him to apply to take the July 2018 bar exam. The majority points to "the unlikelihood that the traffic violations omitted from his registration application, *if properly disclosed*, would have raised significant concerns about his character and fitness." (Emphasis sic.) Majority opinion at ¶ 23. And it states that "it appears that the offenses he failed to disclose in his registration application were not as severe as the offenses" not disclosed by other applicants who have been permitted to reapply to take the bar exam. *Id*. at ¶ 30.

**{¶ 42}** The problem with this analysis is that Coll has not yet provided complete information about all of his offenses, and therefore it is not possible to compare his conduct to any other case or to decide that his pattern of conduct does not disqualify him from admission to the practice of law. For example, he described some of his violations only as "speeding," without giving specific details of the incidents or the dispositions; and as one member of the hearing panel noted, "[I]t might make a difference to the Court if you were going 100 miles an hour in a school zone whereas it might not make any difference to the Court if you were going 25 in a 20 zone." The facts of each violation are material to our review of Coll's application, and without full disclosure of the details of each violation, it is

not possible to conclude, as the majority does, that his pattern of conduct does not raise significant concerns about his character and fitness.

{¶ 43} Here, Coll impeded the bar-admissions investigation into his past conduct—a process that relies on the honesty and candor of the applicant to identify past incidents of unlawful conduct to narrow the focus of the board's investigation. As the panel noted in its report, rather than providing the specific information needed to judge his character and fitness to be an attorney, he described the incidents on his Form 5T as "[r]acism mostly." He testified that he felt he had been racially profiled, and as the panel further noted, when asked to supplement his application, he described his offenses as "KKK … their city is worthless," "The police are the KKK," "KKK … maybe I was speeding," "KKK … They wanted to be me," and "KKK … They hate being them." In explaining these answers, he said, "I thought it was a great opportunity to tell the State of Ohio how I want to freely express myself" and that "I was just making it a point that I can say whatever I want to the State of Ohio." He told the panel, "I wanted this case. * * * I thought it would be interesting. I thought it would be worth it. I said, * * * you can do it and you'll still get final approval to sit for the bar."

{¶ 44} He therefore made clear that his failure to provide the information requested was an attempt at "political expression" in which he sought a reaction from the board; but although he testified that he would advise clients to fill out their own application the same way, he cites no specific authority for the proposition that the right to free expression permitted him to refuse to give answers required of all other applicants seeking the privilege to practice law. Moreover, not only did he indicate that his statements about the police were "just speech" and that he "wasn't referring to anybody in specific," but also the board heard evidence that he had previously admitted that he "didn't really believe" his own claim that the police were the KKK. Thus, the lack of seriousness, candor, and judgment Coll displayed throughout these proceedings renders him unfit to practice law.

**{¶ 45}** Inexplicably, after detailing the transgressions and deliberate failure to disclose information necessary to evaluate his application, the majority cites three cases in which this court delayed a reapplication for admission: *In re Application of Steinhelfer*, 142 Ohio St.3d 120, 2015-Ohio-978, 28 N.E.3d 107 (three years), *In re Application of Baudendistel*, 141 Ohio St.3d 101, 2014-Ohio-5200, 21 N.E.3d 1063 (two years), and *In re Application of Grimsley*, 141 Ohio St.3d 94, 2014-Ohio-5033, 21 N.E.3d 1057 (one and a half years). By comparison, Coll's refusal demonstrates an attitude that he has no obligation to answer the questions posed to all other applicants and his belief that it is our obligation to investigate and discover the answers instead of having him respond. This is an egregious character failure on his part. Yet the court here imposes an application delay of only two years, one year less than the recommendation of the board after its thorough review of this matter. The attitude, lack of candor, and disrespect shown toward this court in Coll's repeated refusal to submit a completed application does not warrant a lenient sanction.

**{¶ 46}** Unlike the majority, I am not convinced that Coll will benefit from the brief " 'period of maturation' " that the court provides him. Majority opinion at ¶ 30, quoting *In re Application of Zatik*, 126 Ohio St.3d 397, 2010-Ohio-3828, 934 N.E.2d 335, ¶ 8. In my view, his persistent refusal to provide the answers to questions required of all other applicants for admission to the practice of law and his explanation and belief that the requirement to answer does not apply to him (he stated that he "didn't feel like [he] had to" answer) demonstrate a lack of candor and a disrespect for the judiciary and for the obligation of this court to thoroughly investigate bar applicants with a view toward their suitability to practice law.

**{¶ 47}** The oath taken by all lawyers in Ohio requires an aspiring lawyer to "show respect toward judges, court staff, clients, fellow professionals, and all other persons." Gov.Bar R. I(8)(A). Coll has demonstrated an attitude that shows he lacks the ability to take that oath and does not have the professional judgment

demanded of all lawyers. His lack of candor and his disrespect for the court in frustrating our obligation to thoroughly investigate those seeking admission to the bar in Ohio suggest that he will not ever have the character and fitness to take the oath to become a lawyer in Ohio.

{¶ 48} Accordingly, I would permanently prohibit Shamir Lee Coll from applying for admission to the practice of law in Ohio.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Shamir Lee Coll, pro se.

Keithley B. Sparrow, Toledo Bar Association.

_____