**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Callam,* Slip Opinion No. 2017-Ohio-4361.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-4361

IN RE APPLICATION OF CALLAM.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Callam,* Slip Opinion No. 2017-Ohio-4361.]**

*Attorneys—Character and fitness—Lack of candor during admissions process—License revoked and reapplication in two years permitted.*

(No. 2016-1240—Submitted February 7, 2017—Decided June 21, 2017.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 636.

_____

**Per Curiam.**

{¶ 1} Michael Alexander Callam, of Macedonia, Ohio, Attorney Registration No. 0092109, was admitted to the practice of law in Ohio on November 17, 2014, after passing the Ohio bar examination administered in July of that year.

**{¶ 2}** On April 17, 2015, the Office of Bar Admissions received a letter from the Geauga County Prosecuting Attorney relating that beginning in September 2013, Callam had been investigated by the Ohio Department of Insurance, had been untruthful during that investigation in interviews conducted in January and September 2014, and had surrendered his Ohio insurance license for cause in October 2014. The Office of Bar Admissions received another letter about Callam after he was indicted on two counts of complicity relating to charges filed against his father for securing writings by deception and selling insurance without a license. Based on those communications, the Board of Commissioners on Character and Fitness exercised its sua sponte authority to commence an investigation pursuant to Gov.Bar R. I(10)(B)(6) (directing the board to investigate allegations about false statements in applications brought to its attention after an applicant has been admitted to the bar).

**{¶ 3}** A panel of the board conducted a hearing and recommended that we revoke Callam's license to practice law and permit him to reapply for admission to the bar in two years. The board adopted the panel's findings of fact and recommendation that we revoke Callam's license but recommended that he not be permitted to reapply for admission to the bar. Callam objects, arguing that his conduct does not warrant permanent disbarment. On review, we adopt the board's findings of fact and recommendation to revoke Callam's license to practice law, but we will permit him to reapply for admission to the Ohio bar in two years.

## Facts

**{¶ 4}** Callam obtained his Ohio insurance license in June 2009. Thereafter, his father, William, began meeting with prospective insurance clients at a restaurant Callam owned. Although William surrendered his Ohio insurance license in 2007, he continued to sell insurance products. He sometimes completed the applications and had Callam sign them as the insurance agent. But Callam, believing that his

2

father was a licensed insurance agent, also authorized William to sign applications on his behalf.

{¶ 5} In 2013, a customer filed a complaint with a life-insurance company alleging that William had misrepresented the attributes of an insurance policy, that William was not licensed to sell insurance, and that she had never discussed insurance products with Callam. William drafted a response to the insurer's inquiry, falsely stating that Callam had been the agent who personally dealt with the client. Callam signed the response and adopted it as his own. The insurer took no further action on the client's claim.

{¶ 6} After receiving a complaint from the client, the Ohio Department of Insurance commenced its own investigation into the matter. During a January 24, 2014 interview, Callam told investigators that he had dealt with the client on numerous occasions, that he had explained the product to her many times, and that he—not his father— had been the primary contact with his clients on all insurance issues. At the end of the interview, the investigators asked Callam to provide a list of all the clients to whom he had sold insurance. He obtained a list from his father and provided it to investigators without independently verifying its accuracy.

{¶ 7} Two months after his interview with the Department of Insurance investigators, Callam applied to take the July 2014 bar exam, but he failed to disclose his interactions with the agency on his application. He took the bar exam in July 2014.

{¶ 8} During a second Department of Insurance interview in September 2014, investigators informed Callam that they knew that he had not told the truth at his first interview. Nonetheless, Callam declined to correct his prior statements and, when pressed by the investigators, steadfastly maintained that he had not signed any insurance applications without having personally met the prospective client. Before the interview concluded, Callam asked the investigators what they wanted from him. They responded that they wanted him to surrender his insurance

license for cause because he was aiding and abetting his father's selling insurance without a license to clients whom Callam had never met. Expressing concern about his legal career, Callam requested some time to think about the investigators' request.

{¶ 9} On October 1, 2014, Callam submitted a request to surrender his insurance license for cause, indicating that he was under investigation for violating R.C. 3905.14(B)(9) (using fraudulent, coercive, or dishonest practices or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in this state or elsewhere), 3905.14(B)(13) (knowingly accepting insurance business from an individual who is not licensed), and 3905.14(B)(39) (knowingly aiding and abetting another person in the violation of any insurance law of this state).

{¶ 10} Callam now admits that although he was under a continuing obligation to update his registration and bar-exam applications, he failed to notify the Office of Bar Admissions of (1) the Department of Insurance investigation, (2) the surrender of his insurance license for cause, (3) a civil lawsuit filed against him and William on October 9, 2014, by the insurance client whose complaint triggered the Department of Insurance investigation, or (4) a civil lawsuit filed against him and other parties on July 8, 2014.

{¶ 11} In his testimony before the panel, Callam also admitted that he had provided untruthful answers throughout both of his interviews with the Department of Insurance investigators. He stated that he first learned of William's felony conviction and corresponding surrender of his insurance license during the insurance company's investigation. He acknowledged that he signed the false response crafted by his father and submitted it to the insurance company. And although he initially stated that he lied in an attempt to protect William from the consequences of William's criminal misconduct, he ultimately admitted that he was also trying to protect himself and his anticipated admission to the bar. He further

testified that he has learned from his mistakes and that going forward, he would always choose to tell the truth.

{¶ 12} Callam ultimately pleaded guilty to a single count of complicity to sell insurance without a license, a first-degree misdemeanor, *see* R.C. 2923.03(A)(2) and 3905.02, and a felony charge against him was dismissed. He received a suspended 30-day jail sentence, was fined $750 plus costs, and was placed on monitored time for one year. He testified that he had been dismissed from the lawsuit filed against him in July 2014 but that a judgment for $72,275 had been entered against two business entities owned wholly or partly by him in that case and that the lawsuit filed against him and William by his former insurance client remained pending.

**Recommendation and Objections**

{¶ 13} The panel found that Callam failed to disclose critical information on his registration and bar-exam applications and failed to discharge his continuing duty to update the information contained in his applications until he was admitted to the practice of law, *see* Gov.Bar R. I(2)(F) and I(3)(F). The panel determined that his conduct was egregious and adversely affected his ability to satisfy the essential eligibility requirements for the practice of law, including his ability to exercise good judgment in conducting his professional business; to conduct himself with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations; and to use honesty and good judgment in financial dealings on behalf of himself, clients, and others. *See* Supreme Court of Ohio, *Definitions of Essential Eligibility Requirements for the Practice of Law*, Requirement Nos. 3, 4, and 8, http://www.supremecourt.ohio.gov/ AttySvcs/admissions/pdf/ESSENTIAL_ELIGIBILITY_REQUIREMENTS.pdf (accessed Apr. 25, 2017).

{¶ 14} Callam's employer and his girlfriend, both of whom are attorneys, testified that they hold him in high regard and believe that they can trust him. But

the panel noted that a person's judgment is often clouded by that person's personal relationships—just as Callam's judgment was clouded by his relationship with his father.

{¶ 15} Ultimately, the panel was not convinced that Callam had remediated his past misconduct, and concluded that he "is open and truthful when he must be so, or when it benefits him." Moreover, the panel noted that timely disclosure of the incidents at issue would have triggered a sua sponte investigation by the board *before* Callam was admitted to the bar and therefore would have prevented him from arguing that he should be permitted to retain his license to practice law on the ground that he has done nothing since his admission to place his clients at risk.

{¶ 16} Based on the foregoing, the panel recommended that Callam's license to practice law be revoked but that he be permitted to reapply in two years by filing a new registration application, submitting to a complete background check by the National Conference of Bar Examiners, and submitting to a full character and fitness review.

{¶ 17} The board adopted the panel's findings of fact and recommendation that Callam's license be revoked but further recommends that he be prohibited from reapplying for admission to the Ohio bar. Callam objects to the board's recommendation and argues that his conduct does not warrant the board's recommended sanction, which is the functional equivalent of permanent disbarment.

{¶ 18} Having reviewed the board's report and the record, we agree that Callam failed to demonstrate that he possesses the requisite character, fitness, and moral qualifications under Gov.Bar R. I(11) to be admitted to the bar. Callam's failure to provide complete and accurate information in his applications to this court casts significant doubt on his honesty, his good judgment, and his ability to conduct himself in a manner that engenders respect for the law and the profession.

**{¶ 19}** We have disapproved bar-exam applications in which the applicants failed to disclose materially adverse information regarding past conduct in their registration and bar-exam applications. *See*, *e.g.*, *In re Application of Coll*, __ Ohio St.3d __, 2017-Ohio-4023, __N.E.3d __; *In re Application of Steinhelfer*, 142 Ohio St.3d 120, 2015-Ohio-978, 28 N.E.3d 107; *In re Application of Worthy*, 136 Ohio St.3d 142, 2013-Ohio-3018, 991 N.E.2d 1131. And in the rare instance in which applicants' false statements and omissions came to light *after* they had passed the bar exam and been admitted to the Ohio bar, we revoked their licenses to practice law but permitted them to reapply for admission at a later time. For example, in *In re Dabney*, 107 Ohio St.3d 40, 2005-Ohio-5834, 836 N.E.2d 573, the applicant's failure to disclose her past criminal convictions came to light *after* her admission to the Ohio bar and *during* a character and fitness investigation relating to her application for admission to the Nevada bar. While we were troubled by her past criminal conduct, including her use of false identification and multiple aliases during her arrests, we noted that her dishonesty did not extend beyond her answers to the application questions about her criminal history. *Id.* at ¶ 13. Therefore, we revoked her license but permitted her to reapply the following year by filing a supplemental character questionnaire and successfully completing a full character and fitness investigation. *Id.* at ¶ 15; *see also In re Application of Sandler*, 63 Ohio St.3d 372, 588 N.E.2d 779 (1992) (revoking license of an attorney based on his failure to timely disclose his criminal history during the admissions process and his false testimony under oath but allowing him to reapply for admission to the Ohio bar and to sit for the bar exam a second time).

**{¶ 20}** Here, like the misconduct at issue in *Dabney*, Callam's misconduct is limited to his underlying unprofessional and criminal conduct and his failure to disclose that information in a forthright and complete manner in his applications to this court. Although his lack of candor about these very serious matters is troubling, it appears that he has cooperated in the ensuing character and fitness investigation

and has shown some remorse for his poor judgment. With time, he may be able to establish that he possesses the necessary qualifications for readmission to the practice of law in Ohio. Therefore, we sustain Callam's objection and will permit him to reapply for admission to the Ohio bar.

{¶ 21} Accordingly, we revoke Callam's license to practice law in Ohio effective immediately. He may, however, reapply for admission after June 21, 2019, by filing a new registration application, submitting to a background check by the National Conference of Bar Examiners and to a full character and fitness review, and successfully demonstrating that he possesses the requisite character, fitness, and moral qualifications to practice law in Ohio.

Judgment accordingly.

KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

O'DONNELL, J., concurs in part and dissents in part, with an opinion joined by O'CONNOR, C.J.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

{¶ 22} I concur in the court's decision to revoke Michael Alexander Callam's license to practice law in Ohio effectively immediately, but contrary to the majority, I would permanently preclude Callam from reapplying for admission to the practice of law in Ohio.

{¶ 23} In *In re Application of Swendiman*, 146 Ohio St.3d 444, 2016-Ohio-2813, 57 N.E.3d 1155, ¶ 13, this court stated:

An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with

respect to the professional duties owed to them."  Gov.Bar R. I(11)(D)(3).  "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id.*

**{¶ 24}** " 'Evidence of false statements, including material omissions, and lack of candor in the admissions process reflect poorly on an applicant's present character, fitness, and moral qualifications.' " *In re Application of Bagne*, 102 Ohio St.3d 182, 2004-Ohio-2070, 808 N.E.2d 372, ¶ 23, quoting *In re Application of Panepinto*, 84 Ohio St.3d 397, 399, 704 N.E.2d 564 (1999).  And this court has recognized that "[a]n applicant whose honesty and integrity are intrinsically suspect cannot be admitted to the Ohio bar" and has permanently denied an applicant admission to the practice of law in Ohio on that basis.  *In re Application of Aboyade,* 103 Ohio St.3d 318, 2004-Ohio-4773, 815 N.E.2d 383, ¶ 16.

**{¶ 25}** Here, Callam obtained his law license by deceit.  A panel of the Board of Commissioners on Character and Fitness concluded he failed to disclose "critical information" on his registration and bar exam applications and failed to discharge his continuing duty to update the information in his applications until he was admitted to the practice of law even after being reminded of that duty during an interview with members of the Akron Bar Association.  Specifically, he failed to disclose the Department of Insurance investigation involving him, the surrender of his insurance license for cause, a civil lawsuit filed by the insurance client whose complaint triggered the Department of Insurance investigation, and a civil lawsuit filed against him and several of his business entities in connection with the sale of his restaurant.  And as the majority recognizes, after hearing the evidence, the panel "was not convinced that Callam had remediated his past misconduct, and concluded that he 'is open and truthful when he must be so, or when it benefits him.' " Majority opinion at ¶ 15, quoting the panel's report.

{¶ 26} In my view, these facts demonstrate that Callam does not possess the character, fitness, and moral qualifications necessary for admission to the practice of law and that his honesty and integrity are intrinsically suspect. Accordingly, I would adopt the board's recommendation and revoke Callam's license to practice law and permanently preclude him from reapplying for admission to the practice of law in Ohio.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Mary L. Cibella, for applicant.

Susan M. Fitch, for the Akron Bar Association.

Vorys, Sater, Seymour and Pease, L.L.P., and Damien C. Kitte, for the Board of Commissioners on Character and Fitness.

The Gertsburg Law Firm Co., L.P.A., and Alexander E. Gertsburg, for amicus curiae, the Gertsburg Law Firm Co., L.P.A, in support of applicant.

_____